C. S. SETTEGAST ET AL. V. SECOND NATIONAL BANK ET AL.

No. 6378.    Decided November 6, 1935.
Rehearing overruled December 4, 1935.
(87 S. W., 2d Series, 1070.)

J. W. *Lockett,* of Houston, for plaintiff in error.

Even if the stock of merchandise and fixtures is sold to a creditor of the seller without complying with the Bulk Sales Law, the creditor, nevertheless, is entitled to participate with other creditors in the proceeds of the sale, and if such creditor who so purchases had priority before such sale, such priority is not lost, and his rights are not subrogated to the claims of unsecured or junior creditors. Texas Bank & Trust Co. v. Teich, 283 S. W., 552; Freidman and Mellinger v. Maier, 238 S. W., 1013; Midland Shoe Co. v. A. L. K. Dry Goods Co., 281 S. W., 344.

*Tom M. Davis, Baker, Botts, Andrews & Wharton,* all of Houston, for defendants in error.

It was error for the court to allow the use of any of the proceeds derived from the sale of the property purchased in violation of the Bulk Sales Law for the purpose of paying rents, court costs, etc., until the claims of all creditors of W. H. H. Miller, arising prior to six months before the transaction, had been paid in full. Nash Hardware Co. v. Morris, 105 Texas, 217, 146 S. W., 874; Stuart v. Elkhorn Bank & Tr. Co., 123 Ark., 285, 185 S. W., 263; Cornish v. Nance Motor Co., 13 S. W. (2d) 139.

MR. JUSTICE SHARP delivered the opinion of the court.

On October 20, 1930, the Second National Bank of Houston instituted this suit against W. H. H. Miller, C. S. Settegast, and Settegast Realty Company. As against Miller it was sought to recover judgment on an unsecured promissory note for $600.00, executed by Miller to the bank. As against C. S. Settegast and Settegast Realty Company, the purpose of the suit was to have declared void as against creditors of W. H. H. Miller, including the Second National Bank, the transfer from

W. H. H. Miller to C. S. Settegast, as trustee for Settegast Realty Company, of the stock of merchandise and fixtures located in the store occupied by Miller in the City of Houston, Texas, and rented by him from Settegast Realty Company, and to have C. S. Settegast treated as a receiver under the Bulk Sales Law, and to give plaintiff priority over Settegast Realty Company in the proceeds of the sale of such merchandise and fixtures, and to have C. S. Settegast and Settegast Realty Company account for the merchandise and fixtures, and proceeds derived therefrom, and for a personal judgment against the Company. Several other creditors of W. H. H. Miller intervened. Miller sought to have the transfer from him to Settegast confirmed. C. S. Settegast and Settegast Realty Company claim that the transfer was valid, and that the Bulk Sales Law had been complied with in substance; but even if not complied with, that Settegast acquired title; and even if he did not acquire unconditional title, that Settegast Realty Company was, as to the other creditors of Miller, still in the attitude of a creditor, with both a statutory and contract lien on the merchandise and fixtures to secure the sum of $4,475.00 due for rent, and unpaid, by said Miller to Settegast Realty Company on August 1, 1930.

In the preliminary hearing in the trial court, beginning November 25, 1930, on which a preliminary judgment was announced January 10, 1931, the court held that the registered notices sent out by Settegast were not in due form, inasmuch as the notices were not sent out ten days before Settegast took possession, and were not a compliance with the Bulk Sales Law. The court decreed Settegast to be a receiver under the Bulk Sales Law, and ordered him to offer the stock for sale in bulk, and until sold in bulk to conduct the business in the same location as a retail store, selling the merchandise for the best price obtainable. He was also ordered to employ necessary clerks, and to pay them a reasonable compensation. The court decreed that a reasonable rental for said store would be allowed as an expense of the receivership. It instructed the receiver to notify by registered mail the other creditors of Miller, and allow them to intervene and file their claims in the case; and several of the creditors did so. The receiver was also required to file monthly reports. In compliance with the court's orders, Settegast acted as receiver, and filed monthly reports. The court fixed the amount of rent to be paid Settegast Realty Company during the receivership at $150.00 per month. The rent of the same premises had

previously been $250.00 per month. Judgment was finally rendered for the Second National Bank against Miller on the note sued on, and also in favor of several interveners against Miller for the amounts of their respective claims; and the claim of Settegast Realty Company for $4,475.00 rent was approved as correct. The trial court also held that Settegast Realty Company was as to the other creditors of Miller still in the attitude of a creditor, and that for $1,500.00, the amount of rent which accrued within six months of the date of the transfer, Settegast Realty Company had a landlord's lien to secure same. The balance of the merchandise on hand and the fixtures were finally sold in bulk for $1,000.00. Out of the proceeds of retail sales and the final bulk sale the court ordered to be paid the expenses of the receivership, including clerk hire, rent, telephone bills, and other items of expense, all of which were approved as reasonable by the court. The balance of the proceeds not being sufficient to pay Settegast Realty Company the $1,500.00 secured rent claim for the six months next preceding the first day of August, 1930, the whole amount thereof was ordered paid to Settegast Realty Company, except enough to pay the costs of the court. Judgment in favor of Second National Bank against Miller was for $676.50, and judgment in favor of Gammel's Book Store, Inc., was for $41.36. From the judgment of the trial court Second National Bank and intervener Gammel's Book Store, Inc., appealed. The other interveners did not appeal. The Court of Civil Appeals reversed the judgment of the district court, and rendered judgment in favor of Second National Bank for $695.10, and in favor of Gammel's Book Store, Inc., for $42.49. 52 S. W. (2d) 533.

The principal contention presented here for decision is that the Court of Civil Appeals erred in holding that C. S. Settegast by taking a transfer from W. H. H. Miller, without complying with all the details of the Bulk Sales Law, became a trustee de son tort, notwithstanding the statutes provide that one who purchases without complying with the Bulk Sales Law shall become a receiver.

The following additional facts appear: On August 1, 1930, a transfer was made by Miller of his merchandise, etc., to C. S. Settegast, as Trustee for Settegast Realty Company, the consideration being the payment of the $4,475.00 rent then due. A written transfer was executed by Miller, and Settegast took possession immediately. The transfer recited a consideration of $4,475.00 paid in rent credit. It recited that

Miller was the sole owner of the stock of goods, and that there was no lien or encumbrance of any kind thereon except the landlord's lien, and it recited that Settegast had demanded and had been furnished a list of Miller's creditors; and the instrument expressly provided that by accepting the assignment the Settegast Realty Company did not in any way release its priority over the other creditors, and in the event of any litigation with, or by, or against any other creditor, "the said Settegast Realty Company shall retain its present priority." On accepting the transfer, Settegast demanded and received from Miller a written list of the names and addresses of the creditors, with the amount of indebtedness owing to each, certified under oath to be a full, accurate, and complete list of his creditors and of his indebtedness. On August 4, 1930, Settegast notified by registered mail each of the creditors mentioned in the transfer. In the preliminary hearing commenced on November 25, 1930, the trial court held that the notices sent out by Settegast were not in compliance with the Bulk Sales Law. The court decreed Settegast to be a receiver under the Bulk Sales Law, and ordered him to offer the stock for sale in bulk, and until sold in bulk to conduct the busines as a retail store, under the direction of the court, as above stated.

This case involves the construction of the Bulk Sales Law. The original Bulk Sales Law (Laws 1909, c. 27) was enacted by the Legislature in 1909. This law was construed by the courts of this State in a number of cases. Owosso Carriage Co. v. McIntosh & Warren, 107 Texas, 307, 179 S. W., 257, L. R. A., 1916B, 970; Gerlach Mercantile Co. v. Hughes-Bozart-Anderson Co. (Texas Civ. App.), 189 S. W., 784, 789; Eagle Drug Co. v. White (Texas Civ. App.), 182 S. W., 378; Barcus v. Parlin-Orendorf Implement Co. (Texas Civ. App.), 184 S. W., 640, 641; Bewley v. Sims (Texas Civ. App.), 145 S. W., 1076, 1077.

Under the terms of the original Bulk Sales Law the courts of this State, as well as the courts of many other states where a similar law was enacted, seriously doubted that any trust relation in regard to the property so unlawfully purchased thereunder was established, or that any lien upon or right in such property was conferred upon a vendor's creditors; although the Act declared any sale thereunder without a compliance with its provisions void. See Bewley v. Sims, supra; McGrennery v. Murphy, 76 N. H., 338, 82 A., 720, 39 L. R. A. (N. S.) 374, and the notes thereunder.

. In 1915 the law was amended, and Articles 4001 et seq., R. S. 1925, constitute the present Bulk Sales Law, and will govern the decision of this case.

Article 4001 specifically provides the requisites necessary for the sale of a stock of merchandise, and further provides that "Any purchaser or transferee who shall not conform to the provisions of this law shall, upon application of any of the creditors of the seller or transferor become a receiver, and be held accountable to such creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale or transfer."

It will be noted from a reading of the foregoing provisions of the Act that if the purchaser or transferee shall not conform to the provisions of the Bulk Sales Law, upon application of any of the creditors of the seller or transferor he shall become a receiver for the benefit of all creditors. The foregoing Act has been construed by the courts of this State in many cases, some of which are cited below: Fischer et al. v. Rio Tire Co. et al. (Comm. Appls.), 65 S. W. (2d) 751; Gardner v. Goodner W. G. Co., 113 Texas, 423, 256 S. W., 911, 912; Texas Bank & Trust Co. v. Teich et al. (Texas Civ. App.), 283 S. W., 552, writ denied (Texas Civ. App.), 286 S. W., 577.

In the case of Gardner v. Goodner W. G. Co., supra, in a well considered opinion written by Judge German, it was said:

"The liability of a purchaser of a stock of goods and fixtures in violation of the Bulk Sales Law is that of a receiver. Having taken the property subject to the rights of creditors, he becomes bound in equity to see that the property or its value is appropriated to the satisfaction of claims of the creditors of his seller. He becomes the trustee of an express trust, and is subject to the same duties and liabilities of such a trustee. We think the law was intended to charge him with liability, however, only to the extent of the value of the property received by him, and this liability is to all of the creditors pro rata. As aptly stated by the Supreme Court of Arkansas in the case of Stuart v. Bank & Trust Co., 123 Ark., 285, Ann. Cas., 1918A, 268, 185 S. W., 263:

" 'The Bulk Sales Act does not make the person who fails to comply with its provisions liable for all the debts of the seller. It treats the sale as being void and the purchaser as being a receiver and his possession as being for the benefit

of all the creditors. He is like any other receiver so far as his liability is concerned. He is responsible for the property purchased, but for that only. If he gets enough property to pay all the debts, he must pay them all. If the property is not sufficient for that purpose, he must pay the creditors pro rata as any other receiver would do.'"

It will also be noted that the Second National Bank prayed that C. S. Settegast and Settegast Realty Company be appointed receivers for the benefit of the bank and the other creditors of Miller of the property purchased in violation of the Bulk Sales Law. The trial court appointed C. S. Settegast receiver of the merchandise and fixtures owned by Miller, and same were disposed of under the orders of the court.

■ Since the Bulk Sales Law does not announce any rules governing the powers, duties, and liabilities of receivers described therein, we may resort to other Articles of the Statute for guidance upon this question. Article 2319, R. S. 1925, reads as follows:

"In all matters relating to the appointment of receivers and to their powers, duties and liabilities, and to the powers of the court in relation thereto, the rules of equity shall govern whenever the same are not inconsistent with any provision of this chapter and the general laws of the State."

■ However, the rule is now recognized in this State that a purchaser or receiver who disposes of or converts to his own use property acquired in violation of the Bulk Sales Law, placing it beyond the reach of creditors, will be held personally liable for the value thereof. Fischer et al. v. Rio Tire Co. et al., supra; Gardner v. Goodner W. G. Co., supra.

It is contended that the trial court erred in holding that the Settegast Realty Company was entitled to rent due by Miller for the use of its building for six months next preceding August 1, 1930, the date of the transfer by Miller to Settegast of a stock of goods, wares, and merchandise. The trial court found that the claim of Settegast Realty Company for rent of the premises occupied by Miller prior to August 1, 1930, was established for $4,475.00, of which amount $1,500.00 was for rent of the premises for the six months next preceding the first day of August, 1930, and the remaining $2,975.00 was for the rent for the twelve months next preceding the six months; and judgment to that effect was entered. The trial court further found that the transfer from Miller to C. S. Settegast cancelled the debt of Miller to Settegast Realty

Company of $4,475.00 as between them, but as between Settegast Realty Company and the other creditors of Miller, the Realty Company reserved and preserved its status as a creditor, and reserved and preserved its priority then existing. The court found that there were no other funds or assets in the hands of the receiver, and that as between the parties the sale from Miller to C. S. Settegast satisfied the indebtedness of Miller to Settegast Realty Company, and decreed that no execution should issue in favor of Settegast Realty Company against Miller. The trial court also found that the sum of $1,500.00 due the Settegast Realty Company for the six months' rent next preceding August 1, 1930, was a first lien on the assets in the hands of the receiver, but found that the funds in the hands of the receiver were not sufficient to pay the sum of $1,500.00.

Neither the trial court nor the Court of Civil Appeals found that Settegast acted in bad faith in accepting the property transferred to him by Miller, and the question of actual fraud or bad faith is not involved here; and we need not discuss that question.

■ The Court of Civil Appeals erred in holding that Settegast was a trustee de son tort, and that Settegast Realty Company was not entitled to a preference lien for the rent due by Miller for the use of the building for the six months just preceding August 1, 1930; and, furthermore, as between it and the other creditors, that it was not entitled to receive its pro rata part of the proceeds derived from the sale of the merchandise and fixtures owned by Miller. Therefore, the trial court correctly held that the Settegast Realty Company was entitled to rent due by Miller for the use of its building for six months next preceding August 1, 1930, and established a preference lien on the funds in the hands of the receiver to that extent. Article 5238, Vernon's Ann. Texas Statutes, as amended, Acts 1933, 43d Leg., p. 282, ch. 112, describes how a landlord's lien may be fixed for the use of a building. There is nothing in the Bulk Sales Law, Articles 4001 et seq., supra, which undertakes to repeal the provisions of Article 5238.

We need not decide the correctness of the action of the trial court in holding that Settegast Realty Company could not hold Miller personally liable for the sum due by him on the rent for the use of its building, because plaintiffs in error, while questioning the correctness of that part of the judgment

338

entered by the trial court, request an affirmance of the judgment as entered.

The judgment of the Court of Civil Appeals will be reversed, and the judgment of the trial court affirmed.

Opinion delivered November 6, 1935.

Rehearing overruled December 4, 1935.