McKESSON & ROBBINS, Inc., v. SOUTH-
WESTERN DRUG CORPORATION
et al.

No. 13292.

Court of Civil Appeals of Texas. Dallas.

Oct. 9, 1942.

Rehearing Denied Nov. 6, 1942.

Allen & Allen, of Dallas, for appellant.

G. H. Penland, Emil Corenbleth, and J. Manuel Hoppenstein, all of Dallas, for appellees.

BOND, Chief Justice.

Appellant, plaintiff in the court below, instituted this suit as a creditor of one J. C. Graham, against appellees, defendants, in the nature of a garnishment after judgment. In due time, appellees answered severally that they were not indebted to J. C. Graham in any amount, that they did not have in their possession any effects of J. C. Graham, and knew of no one who was indebted to, or had in his possession effects belonging to the said Graham. Their answers did not disclose the facts surrounding their possession of property removed by them from the place of business of the creditor Graham. Thereupon, appellant filed a controverting affidavit, alleging, in effect, that the garnishees, before writ of garnishment was served upon them, hauled away, in truckloads and wholesale quantities, practically the whole stock of merchandise of the said J. C. Graham, doing business under the name and style of Owl Liquor Stores; and after such transfers, intermingled the merchandise so received with their own stocks, thereafter appropriating and converting the transferred property to their own use and benefit.

The facts are undisputed. At the time of the occurrences hereinafter related, and of the institution of this suit, appellant and the appellees, except the Southwestern Drug Corporation, were creditors of J. C. Graham: Appellant, in the sum of $4,252.-37; appellees, Julius Schepps Liquor Company $6,398.44; LeSage Company, $5,034.-39, and the Glazer Wholesale Drug Company, $3,532.98. In October, 1940, with the knowledge and consent of J. C. Graham, and without demanding and receiving a written, sworn list of the names and addresses of Graham's creditors and the

amount of indebtedness due and owing to each, and without any notice to such creditors, appellees took possession of and removed from the stock of merchandise of the said J. C. Graham assortments of whiskies and liquors, of the reasonable cash market value of approximately $13,500, as follows: Julius Schepps Wholesale Liquor Company, $5,052.85; LeSage Company, $2,861.47; Southwestern Drug Corporation, $3,449.50, and Glazer Wholesale Drug Company, Inc., $2,204.10; that, at the time of such transfers and removals, J. C. Graham was engaged in business under the name and style of Owl Liquor Stores, and that, at the time of such transfers and removals, said place of business contained an assorted stock of whiskies and liquors. The evidence is that the merchandise so removed was either sold or mixed and mingled, beyond identification, with appellees' respective stocks of merchandise.

We think the evidence is conclusive that at the time of the various transfers of the assorted whiskies and liquors to the respective creditors (appellees), J. C. Graham was conducting a retail business, subject to the Bulk Sales Law (Art. 4001 et seq. Vernon's Ann.Tex.Civ.Sts.); that the removal, sale and mingling of the transferred stocks by appellees was in violation of the law, void as to creditors, and that appellees became liable to the creditors as receivers, accountable for the goods, wares and merchandise received and converted by each, in the proportion such goods bear to the claims of all creditors of J. C. Graham.

█ It is well settled in this state that a purchaser or receiver who disposes of or converts to his own use property acquired in violation of the Bulk Sales Law, or places it beyond the reach of creditors, shall be held personally liable for the value thereof. Fischer et al. v. Rio Tire Co. et al., Tex.Com.App., 65 S.W.2d 751; Gardner v. Goodner W. G. Co., 113 Tex. 423, 256 S.W. 911; Settegast v. Second Nat. Bank, 126 Tex. 330, 87 S.W.2d 1070, 1073, 102 A.L.R. 680. In the Settegast case, our Supreme Court, quoting from Gardner v. Goodner, said: "The liability of a purchaser of a stock of goods and fixtures in violation of the Bulk Sales Law is that of a receiver. Having taken the property subject to the rights of creditors, he becomes bound in equity to see that the property or its value is appropriated to the satisfaction of claims of the creditors of his seller. He becomes the trustee of an express trust, and is subject to the same duties and liabilities of such a trustee. We think the law was intended to charge him with liability, however, only to the extent of the value of the property received by him, and this liability is to all of the creditors pro rata."

██ Accordingly, in order to authorize recovery against a garnishee where the property is acquired in violation of the Bulk Sales Law, the transfer void as to creditors, there must be an affirmative showing either by the garnishee's answer, counter affidavit of the plaintiff, or evidence aliunde, as to bring the suit in the nature of a bill in equity, or creditor's suit, to reach equitable assets in which creditors have a pro rata interest. The garnishee's liability to the creditors for the value of goods purchased or transferred and sold in violation of law, is that of a trustee. In such cases, the legal title to the goods, wares and merchandise is in the transferrer, held only in trust by the receiver perforce of the law, for the use and benefit of the various creditors of the estate. The purpose of the Bulk Sales Law is to protect creditors. The grantees, whether they be creditors or trustees, are to be treated as holding the property for the benefit of all creditors and upon the same conditions. The most that the garnishees may here claim is the right to share upon equal terms with the other creditors. It is settled that where a sale or transfer has been made in violation of the Bulk Sales Law, a creditor may have his remedy by garnishment against the transferee. Owosso C. & S. Co. v. McIntosh & Warren, 107 Tex. 307, 179 S.W. 257, L.R.A. 1916B, 970.

So in the case at bar, there being pleading and evidence showing the nature of appellees' possession of the stock of whiskies and liquors taken from the debtor J. C. Graham, that such transfer was void under the express terms of the Bulk Sales Law, and that the plaintiff and the garnishees were creditors of Graham, the writ of garnishment required them to reveal by pleadings and proof the true status of their possession, the value of the property acquired and the names of creditors rightfully entitled to share in the trust. In Gardner v. Goodner W. G. Co. case, supra [113 Tex. 423, 256 S.W. 912], the court interpreted the Bulk Sales Law to

say that "* * * the statute as now written was not intended to do away with proceedings by garnishment or other process, but was intended to furnish an additional remedy, more direct, effective, and equitable to the various creditors, if more than one"; evidently leaving it to the creditor to proceed by garnishment if he so desired.

 Garnishment is a statutory proceeding or process, an inquisitorial proceeding, to ascertain the facts on which to base liability, if any, of the garnishee, or to ascertain whether he has effects in his hands, or knows of anyone who has effects belonging to the debtor which may be reached and subjected to the payment of the garnishor's debt. And where the garnishee fails to divulge the information sought by the writ of garnishment, where the facts are plead and the evidence shows he has property, or is liable for conversion of property that rightfully belonged to or was subject to the rights of creditors, the court, in garnishment proceedings to meet the ends of justice, may, and we think it is clearly the court's duty to require the garnishee to answer fully as to the status of his possession, and render judgment so that all creditors may share pro rata in the trust estate. In this case, under the pleadings and proof, it would clearly be inequitable and unjust for appellees to appropriate to the full payment of their debts, the trust estate properly belonging to all creditors of the debtor; and it would be equally inequitable and unjust for plaintiff to recover the full amount of its debt against the garnishees, in detriment to the rights of other creditors of the debtor.

We think the garnishees, having taken the property of the debtor under the circumstances here related, became bound in equity to see that the property or its value is applied to the satisfaction of claims of the creditors of the transferrer. Gardner v. Goodner W. G. Co., supra.

In the light of the record, if it could be ascertained that all creditors were represented in the suit, we think plaintiff would be entitled to judgment against the garnishees, severally, for its proportion of the reasonable cash market value of the merchandise taken by each. All creditors of J. C. Graham should share pro rata in the goods, wares and merchandise transferred in trust to the several garnishees;

but, as the record is not clear that appellant and three of the appellees are the only creditors of J. C. Graham, this cause should be reversed and remanded with directions that when plaintiff's pro rata interest as a creditor of J. C. Graham is ascertained in the merchandise transferred to appellees, respectively, in violation of the Bulk Sales Law—for which purpose the trial court should require the necessary disclosures by pleadings and proof—judgment should be rendered for such proportionate interest in the value of the merchandise converted; and it is so ordered.

The judgment of the court below, in so far as it allows garnishees compensation of $150 attorney's fees, to be taxed as cost, is affirmed; but that part denying appellant recovery, on the answers of garnishees, is reversed and the cause remanded with instructions as above.

Reversed and remanded.