## GEORGE KRAFT COMPANY *v.* HELLER.

[No. 23,370.    Filed December 12, 1919.]

1. FRAUDULENT CONVEYANCES.—*Bulk Sales.—Fraudulent Intent.* —Under the Bulk Sales Act, §7471a *et seq.* Burns 1914, Acts 1909 p. 122, the question as to whether a fraudulent intent in fact existed and entered into a transfer of merchandise in bulk is not material; if it is found as a fact that the purchaser in such transaction complied with the act, the court can say as a matter of law that there was no intent to defraud the creditors of the seller; but if the purchaser failed to comply with the act, the court is required to say as a matter of law that the transaction was tainted with a fraudulent intent.    p. 614.

2. FRAUDULENT CONVEYANCES.—*Bulk Sales.—Failure to Give Notice.—Fraud per se.*—The failure of the purchaser of a stock of goods to give notice required by the Bulk Sales Act, §7471a *et seq.* Burns 1914, Acts 1909 p. 122, renders the transaction fraudulent *per se* as to the seller's creditors, regardless of the actual good faith of the parties or of the compliance with the other provisions of the act; and this is true even though it appears that a compliance with the provisions of the act would have been of no benefit to a complaining creditor, no reference to his claim having been made on the list of creditors.    p. 616.

3. FRAUDULENT CONVEYANCES.—*Bulk Sales.—Statute.—Claims Affected.*—Under the Bulk Sales Act, §7471a *et seq.* Burns 1914, Acts 1909 p. 122, neither secured claims, nor claims disputed and in litigation, are excepted from the operation of the statute.    p. 618.

4. APPEAL.—*Suspension of Proceedings.*—The bond filed in perfecting a term-time appeal stays all proceedings for the enforcement of the judgment during the pendency of the appeal, and suspends the authority of a receiver appointed therein to take charge of the property affected during such time.    p. 619.

From St. Joseph Superior Court; *George Ford*, Judge.

Action by Adolph Heller against the George Kraft Company and others.    From an interlocutory order appointing a receiver, the defendants appeal.    *Affirmed.*

*Hubbard & Pettingill* and *Newman, Poppenheusen, Stern & Johnson*, for appellants.

*G. A. Farabaugh*, for appellee.

LAIRY, J.—This is an appeal from an interlocutory order appointing a receiver in a proceeding filed by appellee against appellant, wherein appellee demanded judgment in the sum of $7,500 and prayed an order of court declaring appellant George Kraft Company to be a receiver of a stock of merchandise purchased by it in bulk from the Independent Five and Ten Cent Stores of New York. Appellee alleged that the Independent Five and Ten Cent Stores of New York was indebted to him in the sum of $7,500 at and prior to the date of its sale of said stock of merchandise to appellant as shown by a judgment of the LaPorte Circuit Court for that amount, and facts are alleged showing that appellant purchased the stock and fixtures in bulk, and that it failed to comply with the provisions of §7471a Burns 1914, Acts 1909 p. 122, relating to such sales.

The sworn complaint and a certified copy of the judgment were introduced in evidence on behalf of plaintiff, and the defendants introduced certain affidavits as a defense. After a consideration of the evidence so introduced the court entered an order declaring and appointing appellant George Kraft Company receiver of the stock of goods so purchased from the Independent Five and Ten Cent Stores of New York for the benefit of plaintiff, and directing it to qualify as such receiver by filing bond in the sum of $10,000. From the order so entered this appeal is taken. The only question presented by the several errors assigned relates to the sufficiency of the evidence to sustain the finding on which the order is based.

Statutes regulating the sales of stocks of merchandise in bulk similar to the one on which this proceeding is based have been passed by nearly all of the states of this country. This widespread legislation on the subject indicates that there was a general belief in the existence of a prevalent evil which such legislation was intended

to suppress. The evil sought to be corrected was the tendency and practice of merchants heavily indebted to make secret sales of their merchandise in bulk for the purpose of defrauding their creditors. Under the statutes of this state as existing prior to the enactment of the one under consideration, the question as to whether a conveyance of lands or an assignment or transfer of personal property was or was not made with a fraudulent intent for the purpose of defrauding, hindering or delaying creditors was one of fact. §§7479, 7483 Burns 1914, §§4920, 4924 R. S. 1881. Under the law as it so stood, the court or jury trying the case was required to decide from the facts and circumstances that a fraudulent intent did or did not exist as a fact. It must be assumed that some reason known to the legislature existed which led that body to the conclusion that the rule requiring fraudulent intent to be proved as a fact from subsidiary facts and circumstances disclosed by the evidence should be abrogated in cases involving the sale of stocks of merchandise in bulk. As a consequence the legislature by the act under consideration placed sales of this kind in a class by themselves, and provided that the purchaser at such sales should take certain steps specified in the statute prior to concluding the sale and paying the purchase money. The statute provides that, in case the purchaser conforms to the provisions of the statute, he shall not be held accountable in any way to any creditor of the seller. §7471c Burns 1914, *supra.* On the other hand, if he fails to take the steps imposed in conformity to the terms of the act, the sale is fraudulent as a matter of law so far as the creditors of the seller are concerned. §7471a Burns 1914, *supra.*

Under this statute, the question as to whether a fraudulent intent in fact existed and entered into the transfer is not material. The effect of the act is 1. to take the question of fraudulent intent out of

the realm of fact and place it in the realm of law. If it is found as a fact that the purchaser took the steps provided by the act in conformity with its terms, the court can say as a matter of law that the purchaser had no intent to defraud the creditors of the seller, and that his title to the goods acquired is immune from attack by any such creditor on that ground. On the other hand, if the purchaser fails to take the steps prescribed in conformity with the act, the court is required to say as a matter of law that the transaction is tainted by a fraudulent intent, and that the title acquired is open to an attack by a creditor of the seller in the manner provided by the act. *McGreenery* v. *Murphy* (1912), 76 N. H. 338, 82 Atl. 720, 39 L. R. A. (N. S.) 374; *Peck* v. *Hibben* (1916), 185 Ind. 623, 114 N. E. 216. It is not necessary to speculate on the reasons which prompted the enactment of the statute. It may be that the legislature intended to provide a means available to a purchaser at such sales by which he could protect himself from vexatious litigation by creditors of the seller, and at the same time provide a means by which creditors of the seller might learn or be informed of the proposed sale in time to protect their claims. Whatever may have been the purpose, it is clearly the intent of the act that a compliance with its provisions should make the title acquired by the purchaser secure against attacks by creditors of the seller, and that a failure to so comply should render the transaction fraudulent *per se* and should enable the creditors of the seller to assail the title of the purchaser in the manner provided by the act.

The first step required by the statute of the purchaser is that at least five days before the sale is to be consummated, he shall make a full and detailed inventory of the articles to be purchased, showing quantity and so far as possible in the exercise of reasonable diligence

the cost price to the seller. It is shown by affidavit filed on behalf of appellant that such step was taken in compliance with the act.

The next step required of the purchaser is that he shall demand and receive from the seller a written list of names and addresses of the creditors of the 2. seller with the amount of indebtedness due or owing to each, and certified by the seller under oath to be a full, accurate and complete list of his creditors and of his indebtedness. It is shown by affidavit that at least five days before the sale was consummated a list of creditors was furnished by the seller on demand of the purchaser showing the names of the creditors of the seller and the amount due or owing to each, and that the list furnished was verified by the seller as being a full, accurate and complete list of creditors and of his indebtedness, but that such list did not contain the judgment in favor of plaintiff for $7,500, and that the purchaser had no knowledge of the existence of such judgment. This constituted a compliance with the second specification of the act, and had appellant complied with the third specification as provided in the act by giving the notice required, its title to the goods purchased would have been secure against attack of any creditor of the seller. This specification requires that the purchaser shall, at least five days before the consummation of the sale, give notice of the proposed sale and of the price, terms and conditions thereof to every creditor whose name and address appears on the list, and to all other creditors of the seller of which he has knowledge. The notice is required to be given to the creditor personally or by registered mail. It appears from the evidence that no notice whatever was given in compliance with the requirement of the act. The failure on the part of the purchaser to give such notice renders the whole transaction fraudulent *per se* as to creditors of

the seller, regardless of the actual good faith of the parties involved. Had appellant given notice to all creditors whose names appeared on the verified list furnished him, his title to the goods purchased could not have been successfully attacked by appellee unless he could have shown that appellant had knowledge of his claim in time to have notified him as a creditor, and this would have been true even though the seller had knowingly and fraudulently omitted his name from the list of creditors. *Glantz* v. *Gardiner* (1917), 40 R. I. 297, 100 Atl. 913, L. R. A. 1917F 226, 229, and note; *Coach* v. *Gage* (1914), 70 Ore. 182, 188, 138 Pac. 847. Having failed to comply with the requirement of the statute as to notice, it cannot avail appellant to show that no reference to appellee or his claim appeared on the list of creditors, and that appellant had no notice or knowledge of the existence of such claim prior to the consummation of the purchase. In the light of such facts, it is evident that notice of the proposed sale would not have been given to appellee either personally or by registered mail, even though appellant had complied strictly with the requirement of the statute as to the giving of notice; but it does not necessarily follow that appellee would not have learned of the proposed sale had the required notice been given to the other creditors of the seller. *Stuart* v. *Elk Horn Bank, etc., Co.* (1916), 123 Ark. 285, 291, 185 S. W. 263, Ann. Cas. 1918A 268. However that may be, the reasons advanced by appellant on this point are sufficiently answered by reference to the statute. The legislature has prescribed such notice as it deemed to be sufficient, and has required that it be given. The statute provides what consequences shall ensue to the purchaser in case the statute is not followed, and by force of the statute the consequences so prescribed will follow a failure to comply with its terms, even though it is made to appear that a compli-

ance with the provisions of the act would have been of no benefit to the complaining creditor, or that the failure to so comply did not operate to his prejudice.

Appellant's affidavits show that after the list of creditors had been furnished, it caused all of the accounts payable, owing by the seller, to be paid out of the purchase money before taking possession, and that arrangements were made for the payment of the outstanding notes of the seller which were satisfactory to the holders of such notes. The statute does not provide that the purchaser shall have the option of giving the notice prescribed or of paying out of the purchase money the claims of the seller's creditors appearing on the list and all others of which he has knowledge. When he takes the latter course, he does not comply with the statute, and he acts at his peril as to any creditors of the seller whose claims may not be included.

The judgment on which this proceeding rests is shown to be based on a disputed claim which is still in litigation. Before the hearing and order in the

3. trial court, a bond had been filed and an appeal had been taken to this court, where the appeal is still pending. It is claimed that the statute under consideration does not apply to a judgment creditor under the circumstances stated. The statute refers in general terms to the creditors of the seller without any exceptions or reservations. The statute does not except from its operation claims which are secured, nor does it except disputed claims which are in litigation. The language being clear, the court has no power to engraft on the statute exceptions which the legislature did not see fit to make. If the statute in its application and operation proves to be harsh or oppressive, relief can be sought only at the hands of the legislature. The courts are powerless in the matter. Appellee was not precluded from resorting to the remedy provided by the

statute because the payment of the judgment, if affirmed, was secured by an appeal bond.

The bond was filed in perfecting a term-time appeal, and it had the effect to stay all proceedings for the enforcement of the judgment during the pendency of the appeal. It is asserted that this proceeding is one brought for the purpose of enforcing the judgment, by means of a receivership, as a claim against the assets in its hands as such receiver. It does not appear from the record that any motion was made in the trial court for an order staying the proceedings during the pendency of the appeal, or that this question was in any other way presented to the trial court and decided. The trial court proceeded no further than to make an order declaring that appellant held the property purchased as receiver and directing it to give bond. By this appeal the authority of the receiver to act further was suspended before the claim of appellee was allowed or any other steps taken to subject the property in the hands of the receiver to the payment of appellee's claim. The appeal bond filed operated to stay all proceedings to enforce the judgment, and there can be no doubt that any attempt, while the appeal was pending, to enforce it against the property in the hands of the receiver would be stayed on proper motion.

Finding no reversible error in the record, the judgment is affirmed.

NOTE.—Reported in 125 N. E. 209.