VAN CAMP HARDWARE & IRON COMPANY *v.* ELLIS,
TRUSTEE ET AL.

[No. 26,184. Filed November 1, 1935. Rehearing denied
March 5, 1936.]

*Frank King, Albert M. Thayer, John J. Kelly* and
*Lawrence B. Davis,* for appellant.

*Willis Hickam,* for appellee.

TREANOR, C. J.—This is an appeal perfected within ten days after the rendition of an interlocutory order by the Owen Circuit Court adjudging the appellant to be a receiver and holding appellant accountable as receiver, for goods, wares and merchandise received from appellees Fred C. Bayh and Bernard F. Bayh. The order was made upon the theory that appellant came into possession of such goods, wares and merchandise by virtue of a sale and transfer made contrary to the provisions of the Indiana Bulk Sales Act.[1]

The errors assigned upon appeal and relied upon under Points and Authorities of appellant's brief present the following propositions:

1. That the court erred in overruling appellant's demurrer to the amended complaint for want of facts.

2. The decision of the court is contrary to law.

3. The decision of the court is not sustained by sufficient evidence.

The action was brought in the trial court by Frank Wright upon a promissory note executed in 1925 by Fred C. Bayh and Bernard F. Bayh as principals and John A. Bayh, Birch E. Bayh and Andrew Ziegler as sureties. It was alleged that at the time of the execution of the note Fred C. Bayh and Bernard F. Bayh, as co-partners, were the owners of a stock of hardware goods, merchandise and fixtures, operated under the name and style "Bayh Hardware Store"; that on the 14th day of October, 1931, the co-partners made a sale, transfer and assignment, in bulk, of the whole of said stock to the Van Camp Hardware & Iron Company, appellant herein, otherwise than in the ordinary course of trade and in the regular prosecution of said business, by a written instrument conditionally executed and de-

___

1. §33-201 *et seq.,* Burns Ind. St. Ann. 1933, Acts 1909, ch. 49, p. 122.

livered on October 13th, and on October 14th unconditionally executed and delivered to appellant; that thereupon the appellant made demand upon said co-partners for the surrender and delivery of possession of said stock of goods and fixtures, which possession was then and there surrendered and delivered to appellant.

The allegations of the complaint which have been set out above, considered with other allegations of facts therein contained, forces the conclusion that the chattel mortgage was merely a part of a transaction, the legal consequence of which was to transfer to the nominal mortgagee all of the mortgagors' interest in the property covered by the mortgage. And the fact that a chattel mortgage was given cannot deprive the transaction of its true character as a "sale, transfer or assignment." It follows that the trial court did not err in overruling the demurrer of the defendant to plaintiff's amended complaint.

The other errors assigned require a determination as to whether the evidence was sufficient to sustain a finding that there was a "sale, transfer or assignment" of the property referred to in the complaint. Under the rules controlling the determination of a question of the sufficiency of evidence, documentary in part and oral in part, it must appear to this court that there was no evidence tending to sustain the decision of the trial court, before reversal of a judgment for insufficiency of the evidence would be authorized.

The record supports the following statement of the evidence favorable to appellee:

In September, 1924, appellees Fred C. Bayh and his son, Bernard F. Bayh, borrowed $5,000 of the Spencer National Bank and gave their note with the sureties above named. The note in suit, executed February 3, 1935, and another, were renewals of the

$5,000 note. On February 6, 1925, the makers executed a chattel mortgage on their hardware store to their sureties to indemnify them against loss by virtue of their suretyship. The Spencer National Bank and Wright, assignee of the note in suit, which was admittedly unpaid, asserted a subrogation claim under the indemnifying mortgage. On October 11, 12 and 13, 1931, when the Bayhs, father and son, were pressed for payment they could not pay and were willing to permit their sureties to take possession of their store under that mortgage. At that time they were indebted to appellant for $2,765.02 which was unsecured. The wholesale value of their stock of merchandise and fixtures was $9,000 and the accounts receivable were worth approximately $2,500. On October 12, 1931, the attorney for Wright notified appellant's credit manager, Klippel, of the note in suit. On the next day Klippel and appellant's attorney, King, discussed the situation with Wright and his attorney but no agreement was reached. Klippel said appellant did not want possession of the store surrendered to the sureties because they might be hostile to Van Camp. Klippel and King then went to the hardware store, talked to the Bayhs and took their note for $2,765.02, covering the entire indebtedness due appellant, payable upon demand. They also procured a chattel mortgage covering the entire stock, fixtures and accounts receivable, which mortgage was only to become effective and be recorded in the event appellant should be unable to "get the bank to be reasonable." Klippel told Bayh that if he would "stand by Van Camp we will guarantee that . . . the store will keep running and you will be assured of a job." The mortgage covered all goods purchased to replenish stock, all furniture, fixtures and equipment then in possession and thereafter acquired. All accounts receivable then due and thereafter to become due on account of sale of the

mortgaged property were therein assigned as additional security. The mortgage recited the note given by the mortgagors, upon payment of which the mortgage would be void. It further recited that the mortgagors should retain possession of the mortgaged property and continue to sell the stock of goods at retail, applying toward payment of the mortgage debt the proceeds of all sales, less necessary expenses including payments for goods purchased and a reasonable sum allowed the mortgagor for his services. The mortgagors agreed to maintain the quantity and quality of the stock, to furnish mortgagee with monthly detailed inventories and reports of receipts and expenses and to apply net balances on the debt secured. It was stipulated that in case of default in payment, of violation of any condition of the mortgage, of levy upon the property, or the mortgagee should feel itself insecure, the mortgagee could take immediate possession of the property and foreclose the mortgage or sell the property at public sale without process of law, as the mortgagee should elect, and until such sale the mortgagee should have the right at its option to operate the store at retail. "Such sale, without legal process," it was provided, "shall be at such time, place and such manner as in the judgment of the mortgagee will be most advantageous, and upon five (5) days' notice of the time, place and terms of such sale, with a description of the property to be sold, said notice to be published by at least three notices of such sale being posted in public places in the city, town or vicinity where the sale is to take place." Also: "The proceeds of said sale including any surplus that might have resulted from the operation at retail of said store by the mortgagee after taking possession, after paying the expenses of said operation of said business at retail, after paying the costs, charges and expenses of said sale in bulk, including all costs, charges and expenses in-

curred or sustained by the mortgagee in taking, removing, storing, advertising and selling said property, and any claims or liens of third persons required to be discharged by the mortgagee, shall be applied, as far as the same shall extend, to the payment of the indebtedness hereby secured, and if such proceeds shall be more than sufficient for that purpose the surplus shall be paid to the mortgagor." The mortgage also contained a provision granting the mortgagee an option "to have assigned to the mortgagee a certain lease which the mortgagor now holds on the premises" where the mortgaged property was then, or might thereafter be, situated.

On the next day, October 14, Klippel and King again talked with Wright and his attorney. Klippel then said he could get a chattel mortgage any time he wanted it. No agreement was reached and at 4:30 P. M. the four went to the hardware store. Demand was made of the Bayhs on behalf of Wright for possession of the store under the indemnifying mortgage, which demand was refused. King then demanded possession under the mortgage executed the day before, but Bayh said he would do nothing until he talked with his sureties. At about 4:50 P. M. King had the Van Camp mortgage recorded. At 5:15 Klippel made a second demand on behalf of appellant for possession and at 6 P. M. Klippel and King received possession of the store and mortgaged property. At that time they also received an instrument signed by the Bayhs and reciting, in substance, that the signers did thereby surrender possession and deliver all goods, wares and merchandise, furniture and fixtures and all accounts receivable "under and by virtue of the terms" of the chattel mortgage executed the day before. The Bayhs also agreed therein to "continue in the operation of store and business as the employees of the Van Camp Hardware & Iron Company until further notice by Van Camp at a salary of $25.00 per

week each and to hold separate and apart from my/our funds any and all monies which may be derived from the sale of any of said merchandise and property of every kind and character as the sole property of said Van Camp Hardware and Iron Company; also any monies collected on accounts receivable."

There is evidence to the effect that in signing the instrument last above referred to the mortgagors thought they were making an absolute sale to appellant, and in any event they intended to prefer appellant over all other creditors. Appellant thereafter carried insurance upon the property in its own name. The Bayhs continued to operate the store as employees of appellant and the proceeds of the sales were deposited by the Bayhs in a bank in the name of appellant or its credit manager, Klippel.

The trial court was justified in concluding from the evidence that the intent of the mortgagors and mortgagee was to transfer to the mortgagee all the mortgagors' interest in the property covered by the terms of the mortgage and to vest the mortgagee with the right to sell all the property and the power to unconditionally transfer all right therein and title thereto to third persons. The result of the exercise of the rights and powers conferred upon the mortgagee would be to put the property beyond the reach of the creditors of the mortgagor and to deprive them of the opportunity to protect their claims.[2]

The decision of the trial court was sustained by sufficient evidence and was not contrary to law.

The order of the Owen Circuit Court adjudging appellant to be a receiver under the Bulk Sales Act is affirmed.

---

2. *George Kraft Co.* v. *Heller* (1919), 188 Ind. 612, 125 N. E. 209.