## The Trust Company of Chicago, Appellant, v. Joseph Fargeson, Defendant. Ace Auctioneers and Liquidators, Inc., Appellee.

### Gen. No. 44,681.

Opinion filed March 21, 1950. Released for publication April 21, 1950.

NATHAN WOLFBERG, of Chicago, for appellant.

KAMFNER & HALLIGAN, of Chicago, for appellee; MARTIN K. IRWIN and EDWIN A. HALLIGAN, both of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order and judgment entered by the municipal court of Chicago in favor of garnishee defendant, who is now the appellee. Plaintiff

appellant was the lessor of premises occupied by the primary defendant, one Fargeson, who operated a hardware store. On February 16, 1948, Fargeson sold his entire stock to the garnishee defendant. It is the contention of plaintiff that this sale was in violation of the Bulk Sales Act, and that it may resort to the proceeds in the hands of garnishee defendant for all rents to become due under the lease after the date of sale.

The Bulk Sales Act of Illinois, ch. 121½, par. 78, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 121.01], provides as follows:

"The sale . . . of the major part or the whole of a stock of merchandise . . . otherwise than in the ordinary course of trade . . . is fraudulent and void as against the creditors of the vendor, unless the vendee shall, in good faith, at least ten (10) days before the consummation of the sale, . . . demand and receive from the vendor a written statement under oath of the vendor . . . containing a full, accurate and complete list of the creditors of the vendor, . . . ; and unless the said vendee shall at least ten days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price . . . in good faith, deliver or cause to be delivered . . . a notice in writing to each of the creditors of the vendor named in the said statement or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said goods and chattels and of the price, terms and conditions of such sale: . . ."

Is the lessor under a lease which provides for a fixed gross rental payable in monthly instalments a creditor, within the meaning of the Bulk Sales Act, as to those instalments of rent not due at the time of the sale? This is the legal question presented directly to us by the facts of this case. These facts may be summarized as follows: By lease dated July 10, 1947,

plaintiff leased the store in question to Fargeson for the period commencing August 1, 1947 and ending July 31, 1949. The lease provided that lessee was to pay as rent the sum of $2,640, in monthly instalments of $110. On February 16, 1948, Fargeson sold his entire stock to garnishee defendant. At that time, the February instalment of rent had been paid and no rent was then due. Prior to the sale, garnishee defendant had inquired of Fargeson whether the rent was paid, and was informed that it was. It obtained from Fargeson an affidavit listing creditors, such as is required under the Bulk Sales Act. The sale was made on February 16, 1948, and the furniture removed on February 17 and 18. The bill of sale noted that rent was paid to March 1948. On March 18, 1948, judgment by confession on the lease was entered by plaintiff, representing rent for the month of March 1948. The goods were resold by garnishee defendant, and these garnishment proceedings instituted to reach the proceeds of that sale.

The language of this lease in its provision for a gross rental for a stated term, payable in monthly instalments, is standard in this community. In fact, one of the leases examined in our consideration of the authorities is dated 1914 and uses precisely the same language with respect to the payment of rent. *Lawndale Sash & Door Co. for use of Silverman v. West Side Trust & Savings Bank*, 207 Ill. App. 3. In a broad sense, the landlord under such a lease is a creditor of the tenant until the last instalment of rent is paid, although no monthly instalments may be due. That does not mean that plaintiff is a creditor within the meaning of the Bulk Sales Act.

It has been recognized since the time the question was first presented to our courts that, in connection with remedies afforded creditors against failing debtors, some reasonable limitation had to be placed on a word as all-embracing as "creditors." Such limita-

tion was made in the interpretation of the Bankruptcy Act, bills to set aside fraudulent conveyances, actions by creditors against stockholders, and other remedies designed to protect creditors.

█ The original impulse for Bulk Sales Laws came from merchandise creditors. Credit to retailers of merchandise, unsecured and on open account, has always been an important factor in the nation's economy. Constant turn-over in small quantities makes impossible any provision for the security of the creditor by lien or retention of title. Such creditors had no remedies comparable to forcible entry and distraint.

The Bulk Sales Laws in effect created a new type of fraudulent conveyance (37 C. J. S. sec. 475, p. 1324) and provided a remedy for creditors. The first law, enacted in 1905, limited its application to sales of stocks of merchandise, and was held void. As passed in its present form, it has been held to include judgment creditors, secured creditors, and artificial persons. It has been held to exclude a claim growing out of a breach of contract to deliver goods (*Superior Plating Works v. Art Metal Crafts Co.*, 218 Ill. App. 148) a claim for damages on account of loss of future wages (*Hart v. Evans*, 330 Ill. App. 385), and a claim for breach of contract for sale of merchandise (*Smead Co., Inc. v. Johnson, Inc.*, 262 Ill. App. 385).

The case of *Apex Leasing Co. v. Litke*, 173 App. Div. 323, 159 N. Y. Supp. 707 (affirmed without opinion 225 N. Y. 625), a leading case frequently quoted with approval by Illinois courts, was a claim for rent not due, as in the case at bar. The court held the lessor was not a creditor as to such rent.

In *Coon v. Doss*, 361 Ill. 515, the court quoted with approval from *Apex Leasing Co. v. Litke, supra,* holding that the Act, being in derogation of the common law, must be strictly construed.

In *Superior Plating Works v. Art Metal Crafts Co., supra,* the court said:

"It is apparent if the word creditor is to be taken in the broad sense in which it is sometimes used, as applying to any legal liability that may have been incurred upon a contract, express or implied, or in tort, then appellant was at said time a creditor within its meaning. On the other hand, if the word is to be construed in the limited sense in which it sometimes is used, as applying only to one who holds a demand which is certain and liquidated, then appellant was not a creditor within its meaning. *Steele-Wedeles Co. v. Shoodoc Pond Packing Co.,* 153 Ill. 576; *Capes for use of Haynes, Gordon & Co. v. Burgess,* 135 Ill. 61.

"The Bulk Sales Law is in derogation of the common law and therefore should be strictly construed as to its application. We think it clearly should not be applied to parties holding claims in tort, and the same reasoning would lead us to conclude that the holder of a claim, such as this one, which was uncertain, unliquidated and contingent, would not be a creditor within the meaning of the act. To hold otherwise would give to claimants possessing uncertain and speculative demands a power to harass and interfere with the business of persons against whom such claims are made, which we think could not have been within the intention of the legislature. This construction is, as it seems to us, not only reasonable but in harmony with the construction placed upon a similar law by the courts of New York. *Apex Leasing Co. v. Litke,* 173 N. Y. App. Div. 323, 159 N. Y. Supp. 707."

In the case of *Lawndale Sash & Door Co. for use of Silverman v. West Side Trust & Savings Bank,* 207 Ill. App. 3, which involved an alleged transfer in fraud of creditors, the court held that the lessor under a lease similar to the one in the instant case was not a creditor as to rent not due. In distinguishing this case plaintiff in its reply brief says:

"It may be the law, where the lease does not provide for a fixed gross rental for the term, that the liability and debt thereunder does not arise until each monthly rent payment becomes due and payable; but it is definitely not the law where the lease does provide for a fixed gross rental for the term. On this basis, the principal case certainly can be distinguished from the case of *Lawndale Sash & Door Company v. West Side Trust & Savings Bank,* 207 Ill. App. 3 (appellee's brief 14), where the lease did not provide for fixed gross rental for the term." We have, however, examined the record in that case and find that the lease provides for payment of a fixed gross rental in the same manner as is provided for in the lease involved in the instant case.

In the case of *In re Arnstein,* 101 Fed. 706, a bankruptcy proceeding, the question there turned on the construction of the word "debt." The opinion contains this language:

"A contract of lease is peculiar in its nature, and differs in many respects from other contracts. Rent, as such, is an incident to, and grows out of, the use and occupancy, and is the consideration therefor. Unaccrued rent cannot be said, therefore, to be a fixed liability then absolutely owing, payable in the future, or, indeed, a 'debt' of any kind, as that word seems to be used in the act. It is only an unmatured obligation to pay in the future a consideration for future enjoyment and occupancy. This cannot be said to be, properly speaking, a present debt, demand, or claim at all, as these words are apparently used in the foregoing provisions, due regard being had to the context, and cannot come within either the clause as to fixed liability then owing or a debt founded on contract." Subsequently, the Bankruptcy Act was amended and in its present form provides, under the classification

of claims for damages respecting executory contracts, that a lessor may prove such damages not exceeding one year's rental.

In the case of *Bordman v. Osborn,* 40 Mass. 295 (1839), the action was upon a stockholder's statutory liability for a debt due to plaintiffs, lessors, from the Salem & Boston Stage Company, lessee. Defendant had sold his stock before the claim for rent had matured. The court, through the eminent CHIEF JUSTICE SHAW, held that there was no debt and made a distinction between rent, a contract for the payment of money, and an obligation to pay money at a future date, saying: "Rent is a sum stipulated to be paid for the actual use and enjoyment of another's land, and is supposed to come out of the profits of the estate; . . . from this it seems clear, that although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt accrues until such enjoyment has been had."

The case of *Kroch v. B. G. Operating Co.,* 286 Ill. App. 301, a creditor's bill, held that a covenant to pay rent does not create a debt until the date stipulated for payment, citing: *In re Roth & Appel,* 181 Fed. 667; *Towle v. Commissioner of Banks,* 246 Mass. 161, 167; Tiffany on Landlord and Tenant (1910), vol. 1, sec. 166; *Chicago Title & Trust Co. v. Corporation of the Fine Arts Building,* 288 Ill. 142; *Pacific States Corp. v. Rosenshine,* 113 Cal. App. 266, 298 Pac. 155; *Wilder v. Peabody,* 37 Minn. 248; and *Stockholm v. Mechanics' & Laborers' Sav. Bank,* 32 N. J. Eq. 163.

In its brief, plaintiff cites as authority for its position, cases involving claims by the federal government for taxes, claims for money owing on a promissory note, and particularly, the case of *Wright v. Haley,* 208 Ind. 46, 194 N. E. 637. This last case holds, contrary to the Illinois authorities, that a claim for rent to accrue is within the provisions of the Bulk Sales Act. Plaintiff also cites the case of *Winthrop Restau-*

o ─────────────────────────────

*rant Co. for use of Stock Yards Packing Co. v. Kour-netas,* 265 Ill. App. 535, in which vendor's affidavit, given pursuant to the Bulk Sales Act, recited that "there are no outstanding bills unpaid against the Winthrop Restaurant Co." While the court used some general language defining creditors, the only purpose of that language was to interpret the words, "outstanding bills unpaid." This was held to be insufficient to meet the requirements of the statute. The court did not have before it any such question as we are here considering.

The authorities on which plaintiff relies rest on the reasoning that as by precedent, a note payable in the future, or goods sold on instalments are within the Bulk Sales Act, therefore, a lease providing for a gross amount of rental payable in future instalments is likewise within the Act. But, as we have pointed out, rent is in a different class, both historically and in any classification made with a realistic regard for the objectives and purposes of the Act. In a recent book, "An Introduction to Legal Reasoning," by Professor Edward H. Levi (University of Chicago Press, 1949), the fallacies and constructive values of reasoning by precedent are brilliantly revealed and illustrated. He says: "The problem for the law [in applying precedent] is: When will it be just to treat different cases as though they were the same? A working legal system must . . . be willing to pick out key similarities and to reason from them to the justice of applying a common classification." With what group of precedents shall we identify claims for future rent? It is true that in its provision for payment, this lease is similar to any money obligation payable in instalments. However, the vital difference to be considered in the interpretation of the Bulk Sales Act is that whereas a merchant creditor parts with his goods and a money creditor parts with his money, a lessor does not, in any comparable sense, part with

351

his property. Moreover, the lessor is by statute given preferential and speedy remedies to repossess and obtain payment. The injustice of applying an interpretation which would include lessors has been pointed out in the cases cited. In the instant case, for example, to interpret the Act to include the lessor would be to give it a claim for rent which would continue for a period of more than a year following the sale. Business leases frequently run five, ten and twenty years. No creditors could be paid until some adjustment had been made of lessors' claims. The extent to which the operation of this Act could be seriously hampered by the inclusion of such claims is obvious.

██ The authorities of Illinois and those of other states as well, extending over a period of more than one hundred years, holding that creditors with contingent and uncertain claims are not within the Bulk Sales Law and that bills to set aside transfers in fraud of creditors and similar proceedings do not include lessors with claims for future rents, establish the law to be followed in this case.

██ Plaintiff has argued that vendee did not introduce in evidence any documents required under the Illinois Bulk Sales Act and that, therefore, the sale is void. Holding as we do, that plaintiff is not a creditor, it cannot complain of this. However, we are of the opinion that garnishee defendant's position on this matter is sound. It appears that at the trial, plaintiff's attorneys called upon attorneys for garnishee defendant to produce affidavits procured from vendor at the time of sale. Thereupon, the documents were marked plaintiff's exhibits 1, 2 and 3 for identification, but were not introduced in evidence. It may well be that if the affidavits had remained in the possession of garnishee defendant, the burden of proof would have been upon it to produce and put in evidence the affidavits. Where, however, the attorney for the opposing party has been given the documents in question and

they are identified as his exhibits, it is incumbent on him to see that they are properly introduced in evidence. Garnishee defendant contends the record shows that it had procured a sworn statement of creditors in accordance with the Bulk Sales Law, and that it purchased the stock of goods from the vendor without knowledge of any claim or lease of the lessor. While there is some evidence in the record as to conversations which occurred subsequent to the sale, there is no evidence whatever to show that within the time prescribed by law, garnishee defendant knew of any claim by the lessor.

For the reasons aforesaid, the judgment of the municipal court is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.