## No. 17,805.

E. A. RATLIFF, ET AL., *v.* J. C. DAVIS, ET AL.

(294 P. [2d] 1109)

Decided March 19, 1956.  Rehearing denied April 2, 1956.

Mr. JOSEPH COREY, for plaintiffs in error.

Messrs. HAM, JOHNSON & SHINN, Mr. FRED E. SISK, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

The parties to this litigation are here in reverse order

of their appearance in the trial court, where defendants in error were plaintiffs and plaintiffs in error were defendants. We will refer to them as they appeared in the trial court, or by name.

Plaintiffs' complaint, stated in three claims, alleged that plaintiffs as lessors entered into a written lease with Ratliff-Gore Motors, Inc., a corporation, as lessee, on a business property in Las Animas, Colorado. Lessee was to occupy the property "for the sale and repair of automobiles and as an automobile garage and the sale of automobile accessories and for the repair thereof." The lease was for five years commencing May 1, 1953, and the rent was payable at the rate of three hundred dollars per month in advance. The lease further provided that "the lessors shall have a lien on all of the property of the lessee other than mortgaged property or hereafter mortgaged used or situated on the leased premises, to secure payment of the rent * * * to become due under this lease * * *."

It was alleged that subsequent to the execution of the lease the corporate name of the lessee was changed to Ratliff Motors, Inc.; that about January 31, 1955, Ratliff Motors, Inc., transferred or assigned in bulk the entire stock of merchandise, fixtures and equipment pertaining to said business to defendant Eldean A. Ratliff individually; that said property was removed from the premises; that the sale to Eldean A. Ratliff was fraudulent and inferior to the rights of plaintiffs; that Eldean A. Ratliff had actual notice of the terms of the lease; that no notice of the sale in bulk of the corporate assets was ever given to plaintiffs, and that by virtue of C.R.S. '53, 18-1-1 said Eldean A. Ratliff became a receiver of said corporate assets so transferred to him. It was further alleged that if any notice of said sale had been given it was insufficient to comply with the provisions of C.R.S. '53, 18-1-1.

Plaintiffs prayed that the transfer be set aside and that an injunction be granted enjoining the sale thereof that

said property so transferred be impressed with a lien in favor of plaintiffs for rents due or to become due, and that Eldean A. Ratliff be appointed receiver of said property.

By their answer defendants admitted the execution of the lease and the sale in bulk to Eldean A. Ratliff; denied that it was subject to a lien or that Eldean A. Ratliff had notice of said lien; denied that plaintiffs were creditors, and that no notice of the bulk sale was given.

Trial was to the court. On June 30, 1955, the trial court entered its findings and decree. It was thereby determined that Eldean A. Ratliff was secretary of Ratliff Gore Motors, Inc. at the time the lease was executed and that he attested the lease as secretary of the corporation; that prior to said sale and transfer of the assets in bulk to Eldean A. Ratliff no inventory was taken and that plaintiffs had no notice of said sale; that Eldean A. Ratliff moved the assets so acquired from the leased premises to another location where he operated a business known as E. A. Ratliff Motors. The trial court found that an inadequate consideration for said assets was paid by said Eldean A. Ratliff and that the sale of the assets to him depleted the worth of Ratliff Motors, Inc., so that "it is not in a position to continue with the lease of plaintiffs' building and that such was the intent of Eldean A. Ratliff and a fraud on plaintiffs." That no notice of said bulk sale was given pursuant to C.R.S. '53, 18-1-1. The trial court decreed a lien on the assets of the corporation so transferred in favor of plaintiffs and appointed Eldean A. Ratliff receiver of said property.

From the judgment and decree so entered, defendants bring the case here on writ of error. We should here note that on June 30, 1955, the trial court allowed defendants sixty days within which to prepare and tender a reporter's transcript in the case. No extension of this time was granted. The transcript before us fails to show that it was "lodged" in the trial court, neither does it appear that notice of its lodging was ever given to opposing

counsel. It does bear the signature of the trial judge, affixed on September 3, 1955. Because the reporter's transcript was not tendered within the time limited by the order of court it must be disregarded by us.

However, it appears from the briefs that the essential facts involved are not in dispute. We are called upon to determine whether plaintiffs are entitled to the relief granted under the admitted facts and the findings of the trial court.

Two essential matters were determined by the trial court: (1) that Eldean A. Ratliff paid an inadequate consideration for the property transferred to him; that he stood in a confidential relationship with the corporation and perpetrated a fraud on plaintiffs, and (2) that there was no compliance with the provisions of C.R.S. '53, 18-1-1.

Defendants contend that plaintiffs were not creditors within the meaning of this statute. In the instant case the relationship between the parties was something more than that of landlord-tenant, because of the contractual lien created by the lease. When the lease was executed plaintiffs were granted a lien for the full amount of the rent during the term of the lease to the extent of the personal property pledged.

It was held in *Gregory v. Filbeck*, 12 Colo. 379, 21 Pac. 489 that a wife may maintain an action to set aside a conveyance by her husband, made with fraudulent intent to prevent the wife from collecting alimony which might be awarded, even tho the cause for such divorce did not arise until after the conveyance was made. See, also, *House v. Johnson*, 19 Colo. App. 524, 76 Pac. 743; *Mulock v. Wilson*, 19 Colo. 296, 35 Pac. 532. The case of *Wright v. Haley*, 208 Ind. 46, 194 N.E. 637 is directly in point. There plaintiff in 1929 leased a building to Trees for five years, which structure Trees occupied and used as a hardware store. In April, 1931, Trees sold the assets in bulk to Wright and Todd without complying with the Bulk Sales Law. Plaintiff brought an action to have the

purchasers declared receivers under the Indiana statute. Plaintiff had judgment in the trial court, which was affirmed on appeal, the court stating:

"In the case of *Kraft Co. v. Heller*, (1919) 188 Ind. 612, 125 N.E. 209, this court pointed out the analogy between the remedies provided by the Bulk Sales Law and actions by creditors to set aside fraudulent conveyances. The court said: 'Under the statutes of this state as existing prior to the enactment of the one under consideration, the question as to whether a conveyance of lands or an assignment or transfer of personal property was or was not made with a fraudulent intent for the purpose of defrauding, hindering or delaying creditors was one of fact. * * * Under the law as it stood, the court or jury trying the case required to decide from the facts and circumstances that a fraudulent intent did or did not exist as a fact. It must be assumed that some reason known to the Legislature existed which led that body to the conclusion that the rule requiring fraudulent intent to be proved as a fact from subsidiary facts and circumstances disclosed by the evidence should be abrogated in cases involving the sale of stocks of merchandise in bulk.'

"And again: 'The statute refers in general terms to the creditors of the seller without any exceptions or reservations. The statute does not except from its operation claims which are secured, nor does it except disputed claims which are in litigation. The language being clear, the court has no power to ingraft on the statute exceptions which the Legislature did not see fit to make.'

"It is clear that Trees was obligated under the lease to pay appellee the rent for the building for the full term. The premises had been delivered to and accepted by Trees, and, as between the parties to the lease, Trees was in possession. Appellee was not required to accept a surrender of the premises, nor is it shown that they had been surrendered, or that he did accept a surrender. Nor is there any effort to show, or rely upon, any breach of the covenants of the lease by appellee. The lessee's

obligation to pay the installments for the full term * * * is no different than the obligation to pay partial payments for merchandise sold, to be paid for at a future date, which has not arrived, or to pay a promissory note given for merchandise, or for money, which has not matured.

"(4) It is well settled that a creditor may maintain an action to set aside a fraudulent conveyance, although his debt is not due."

■ It appears to be well settled that secured creditors are included in the term creditors within the contemplation of the bulk sales law.

After the transfer to Eldean A. Ratliff, the corporation, which had obligated itself to pay the rental for the full five year period and had given the lessors a lien on corporate assets to secure all rent to become due, was a mere skeleton. The plaintiffs could look to nothing for their rent because the corporation had disposed of all its assets to one of its officers.

■ Notwithstanding a division of authority exists on the question of whether "creditors" under the Bulk Sales laws include creditors whose claims have not matured, the general rule, supported by the weight of authority, appears to be that they are included. If such a restricted meaning should be given the statute, limiting it to creditors whose claims are presently due and owing, then a great class of creditors is excluded from the beneficent protection afforded by the statute, and the way is opened for fraudulent transfers to avoid undesired or ill-advised purchases, leases, or services. The instant case, grounded not only on the statute but on allegations of fraud sustained by the court, is a plain example of the injustice which may ensue if the statute be given the narrow construction urged by defendants.

The judgment of the trial court should be, and is affirmed.