**B & H AUTO SUPPLY, INC., et al.,**
Appellants,

v.

**Adolphus ANDREWS, Jr., et al., Appellees.**

No. 16930.

Court of Civil Appeals of Texas.

Dallas.

July 7, 1967.

Thomas A. Melody, John C. Cain, Dallas, for appellants.

J. Richard Gowan and Thomas A. Morris, of Johnson, Bromberg, Leeds & Riggs, Dallas, for appellees.

DIXON, Chief Justice.

B & H Auto Supply, Inc., a corporation, and Floyd Hardin, individually, doing business as B & H Auto Supply, have appealed

from a personal judgment against them in favor of appellees Adolphus Andrews, Jr. and others doing business as Andrews-Dillingham Properties, for an alleged violation of the Bulk Sales Law, Art. 4001, Vernon's Ann.Civ.St.

The above named statute has been repealed, the present Bulk Sales Law being Sections 6–101 to 6–106 of the Uniform Commercial Code, which went into effect at midnight June 30, 1966. However, the transactions here involved took place prior to the repeal of Article 4001 and the adoption of the Code, so this controversy must be decided under the repealed statute.

B & H Auto Supply, Inc. was lessee of two separate real properties, one located in the Irving North Shopping Center in the City of Irving, Dallas County, Texas, the other located in Webb Chapel Village in the City of Dallas, Dallas County, Texas. For purposes of clarity these leases will be discussed separately.

### Irving North Shopping Center Lease

In March 1964 appellees Andrews-Dillingham Properties as landlords entered into a written lease contract with B & H Auto Supply, Inc. as tenant covering property in the City of Irving, Dallas County, Texas for a minimum rental of $16,500 for a term of five years, payable $225 per month for the first year, $250 per month the second year and $300 per month for the balance of the contract term.

On July 31, 1964 the parties to this lease agreed that it might be extended to August 31, 1969 and that B & H Auto Supply, Inc. might sublet the premises to one Ray O'Connor, but that the B & H corporation would not be relieved of liability.

In April 1965 O'Connor defaulted and vacated the premises. The B & H corporation afterward made payment of the rentals due through August 31, 1965, but itself defaulted on the monthly payment due September 1, 1965 and has paid no further rent since that time.

It was stipulated that all rentals accruing prior to September 1, 1965 had been paid, but that B & H Auto Supply, Inc. owed past due rentals in the sum of $1,536 which had accrued since September 1, 1965.

### Webb Chapel Village Lease

Appellees Andrews-Dillingham Properties were never the landlords in the Webb Chapel lease, and B & H Auto Supply, Inc. was not the initial lessee.

The record before us does not disclose the name of the landlord in the Webb Chapel lease. The initial lessee was W. K. Bullock, individually. Bullock was President of B & H Auto Supply, Inc.

Bullock testified that as lessee he first rented the property to B & H Auto Supply, Inc. and later subleased it to appellant Floyd Hardin, individually.

It is not contended that any of the rentals on this lease are past due. Bullock admitted his continuing liability for payment of the rentals under the lease.

### Alleged Violation of Bulk Sales Law

On August 31, 1965 B & H Auto Supply, Inc. conveyed its stock of merchandise located on the Webb Chapel premises to W. K. Bullock, individually. Part of the consideration was the value of the merchandise, which was to be credited on a note owed by the corporation to Bullock for money loaned to the corporation. Also part of the consideration was the payment by Bullock of the creditors of the corporation. Bullock testified that he paid all the debts due by the corporation on the date of the transfer, August 31, 1965; and in support of his testimony he put in evidence numerous cancelled checks totaling several thousand dollars. The record does not reveal the names of any alleged creditors who claim they were not paid except Andrews-Dillingham Properties. There was no evidence of the value of the stock of merchandise at the time of the transfer.

The day following the above transfer of the stock of merchandise, Bullock, the transferee, in turn transferred the merchandise to Floyd Hardin, who apparently then began operating a business individually at the Webb Chapel premises as Floyd Hardin doing business as B & H Auto Supply.

On October 27, 1965 appellees filed this suit alleging B & H Auto Supply, Inc. transferred the stock of merchandise here involved to Hardin on September 1, 1965, and that on said date B & H Auto Supply, Inc. was indebted to appellees for rentals due and to become due on the Irving Shopping Center property; and further that the ten days' notice of the transfer had not been given to creditors as required by Art. 4001, V.A.C.S. The contingent liability of B & H Auto Supply, Inc. on the Irving Shopping Center lease was alleged to be $13,200, based on the monthly rental payments due and to become due in the future. Appellants asked for attorney's fee in the amount of $750.

Appellants further prayed that Hardin be named as receiver pursuant to the terms of Article 4001.

W. K. Bullock was not made a party to the suit.

### Judgment of the Trial Court

In rendering judgment as of February 3, 1966 the trial court found that B & H Auto Supply, Inc. was indebted to appellees for past due rentals on the Irving Shopping Center property in the amount of $1,792, plus agreed attorneys' fees in the sum of $750, making a total of $2,542 plus interest, for which sum a personal judgment was rendered against both B & H Auto Supply, Inc. and against Floyd Hardin, individually.

The court found that B & H Auto Supply, Inc. will be unable to pay the additional sums of rent to become due in the future under the terms of the lease.

The court concluded that Floyd Hardin, as provided under the terms of Article 4001, is a receiver for the benefit of appellants and all other creditors of all assets acquired from B & H Auto Supply, Inc. Accordingly, Hardin was directed to file within thirty days a verified accounting of all assets he acquired from B & H Auto Supply, Inc., including the location and condition of said assets; to file a statement of the proceeds of any sale of such assets by Floyd Hardin; to hold and continue to hold the remaining assets as receiver for appellees as security for such further sums as shall become due to appellees under the lease terms; and to render annual accounts under oath to the court until the receivership should be terminated.

### OPINION

In their first point of error and argument thereunder appellants contend that there was no violation of Article 4001 because it is undisputed that the rental installment payments had been fully paid through August 31, 1965, therefore there was no debt due on the rental contract on that date; and that any future installment payments, being unmatured obligations and contingent in nature, were not debts; and appellees were not creditors within the meaning of the statute.

We know of no Texas case exactly in point, though there are cases which shed some light on the question. Fischer v. Rio Tire Co., 65 S.W.2d 751 (Tex.Comm'n App., 1933, holding approved), a case involving the Bulk Sales Law, quotes Bouvier's Law Dictionary in which the word "creditor" is defined as follows: "He who has a right to require the fulfillment of an obligation or contract." The opinion then quotes 27 C.J. 878, 879 to the effect that the statute is not restricted to any particular class of creditors, but includes all persons who were creditors of the seller at the time of the sale, although their claims were not due and though they were not creditors for merchandise, but were merely general creditors of the seller in other transactions.

In McWade Tube Co. of San Antonio, et al. v. Newnam et al., 258 S.W. 560 (Tex. Civ.App., San Antonio 1924, writ dism'd)

facts were that a salesman had negotiated a contract for the sale of tubes. Before the sale was fully consummated and before the payment of the salesman's commission was actually due, a transfer of merchandise was made in violation of the Bulk Sales Law. The court held that the salesman was nevertheless a creditor, as his claim had accrued, though it was not actually due, at the time of the sale.

■ A majority of decisions in other jurisdictions hold that the owner of an unmatured debt which is fixed and which is certain in amount is a creditor who may assert his rights as such. 85 A.L.R.2d 1220 and cases there cited; 37 C.J.S. Fraudulent Conveyances §§ 63, 64, 65, 72, 74, 101, 479, pp. 908, 909–910, 914, 938, 1333–1334. For example, a person who borrows $1,000 and signs a note for that amount payable in monthly installments is a debtor for the unpaid balance of the note though he may not be in arrears with any installment at the time of the bulk sale. The debt, though not due, is fixed and certain. Its existence as a debt is not contingent.

Appellants argue that their liability for monthly rental payments is contingent, not fixed and certain as in the example of the promissory note above mentioned. Trust Co. of Chicago v. Fargeson, 340 Ill.App. 344, 92 N.E.2d 211 (1950); 85 A.L.R.2d 1223, 1224. In support of their argument appellants point out that the lease contract expressly provides that in the event of the destruction of the premises by fire, tornado, or other casualty the lease shall terminate. Thus there is no certainty that the obligation of appellant B & H Auto Supply, Inc. to pay rent in the future will ever mature.

Also the lease contract provides that upon default in payment of any installment, appellees at their election may declare the lease forfeited, or may re-enter and relet the premises at the best rent obtainable, crediting the lessee with the rent so received. The record is silent as to whether any such action has been taken by appellees. However, W. K. Bullock, President,

testified and the court found that B & H Auto Supply, Inc. will not be able to make any more payments on rent now past due or that may become due. Notwithstanding the silence of the record on the point we must say that it would be surprising indeed if appellees as landlords should allow their building to remain unoccupied in the vain hope of collecting rent money from a tenant who cannot pay.

There are cases from other jurisdictions which support or tend to support appellees' position. Ratliff et al. v. Davis et al., 133 Colo. 315, 294 P.2d 1109 (1956) involved unmatured payments on a lease contract. The court held that the term "creditors" as used in a Bulk Sales Law included creditors whose claims have not matured. The court declared that to hold that the statute included only those whose claims are presently due would be to exclude a great class of creditors and would open the way for fraudulent transfers to avoid undesired or ill-advised purchases, leases or services.

In Wright v. Haley, 208 Ind. 46, 194 N.E. 637 (Ind.1935) it was held that a lessor was a creditor though, as in the instant case, the rent was paid up to the last day of the month in which sale was made. See also Dubin v. Woolfson, 117 Conn. 143, 167 A. 97 (1933); Mutual Grocery Co. v. Weiler et al., 14 N.J.Misc. 909, 188 A. 513 (1936); Empire Radio Co., Inc. v. Bates, 56 R.I. 116, 183 A. 882 (1936).

■ We have concluded that the transfer of the stock of merchandise on August 31, 1965 by B & H Auto Supply, Inc. to W. K. Bullock and the transfer on September 1, 1965 by Bullock to Hardin were in violation of Art. 4001, V.A.C.S. We have also concluded that appellees were creditors of B & H Auto Supply, Inc. within the meaning of the statute and that the personal judgment against B & H Auto Supply, Inc. for matured and past due monthly rental payments in the amount of $2,542 principal must be sustained. Appellants' first point of error is overruled.

We make no holding as to whether appellees are now entitled to judgment or will be in the future entitled to judgment against B & H Auto Supply, Inc. for additional monthly installments. That question must be determined on the happening in the past or future of certain contingent events concerning which the present record is silent.

The second point of error asserts that it was incorrect to render a personal judgment against Floyd Hardin, the subsequent transferee of the stock of merchandise. With this contention we agree.

[4–6] The transferee of property sold in violation of the Bulk Sales Law, under the terms of the statute itself, occupies the status of a receiver. As such he is not personally liable for the debts of the seller. He is accountable to the seller's creditors on a pro rata basis only to the extent of the value of the property. The transferee has no personal liability at all unless he converts the property to his own use or otherwise defaults in his responsibility as receiver so as to place the property beyond the reach of the creditors. Since the statute announces no rules to govern the transferee's powers, duties and liabilities as receiver the court will resort to other statutes for guidance in regard to the duties and liabilities of a receiver. Gardner v. Goodner Wholesale Grocery Co., 113 Tex. 423, 256 S.W. 911 (1923, opinion adopted); Fischer et al. v. Rio Tire Co. et al., 65 S.W.2d 751 (Tex. Comm'n App.1933, holding approved); Settegast et al. v. Second Nat'l Bank et al., 126 Tex. 330, 87 S.W.2d 1070, 102 A.L.R. 680 (1935); Southwestern Drug Corp. v. McKesson & Robbins, Inc., 141 Tex. 284, 172 S.W.2d 485, 155 A.L.R. 1056 (1943); Grogan Lord & Co. et al. v. Cameron Mfg. Co., 256 S.W.2d 996 (Tex.Civ.App., Austin 1953, affirmed in part and reversed in part on other grounds, 153 Tex. 16, 262 S.W.2d 939, 1953).

■ Since the record before us is silent as to any conversion of the property to his own use by Hardin, or his disposing of it in such manner as to place it beyond the reach of the creditors of B & H Auto Supply, Inc., it was error to render personal judgment against him for $2,542 or any other amount. If subsequent proceedings disclose that Hardin has converted the property or part of it to his own use he may be personally liable, but even then his personal liability will extend only to the value of the property converted. 14 Tex.Jur.2d 27; 49 Tex.Jur.2d 105. Appellants' second point is sustained. At some stage of the proceedings the value of the merchandise transferred to Hardin will have to be determined.

■ In their third point appellants claim error on the ground that there was no evidence as to a lease between appellees and appellant B & H Auto Supply, Inc. The point is without merit. The stipulation entered into between the parties referred to an attached copy of the lease as "Exhibit A". It is recited in the Transcript that the copy attached to the stipulation may be found attached to appellees' petition. Moreover, both parties in their briefs refer to the lease. And it was stipulated that the rentals due for the months of September 1965 through February 1966 under the terms of the lease amounted to $1,536, and that all rentals prior to September 1, 1965 had been paid. Appellants' third point is overruled.

■ In their fourth point appellants complain because the court overruled their motion to reopen the case. Appellants wanted to file a trial amendment pleading violation of the anti-trust laws of the state. The court did not abuse its discretion in overruling the motion. Westinghouse Elec. Corp. v. Pierce, 153 Tex. 527, 271 S.W.2d 422 (1954); Ragsdale v. Lindsey, 254 S.W. 2d 843 (Tex.Civ.App., Amarillo 1952, writ ref'd n. r. e.). The fourth point is overruled.

The judgment as to appellant B & H Auto Supply, Inc. is affirmed. The personal judgment against appellant Floyd Hardin

is reversed and the cause remanded for further proceedings in accordance with this opinion.

Affirmed in part and reversed and remanded in part.