SOUTHWESTERN DRUG CORPORATION ET AL
v. MCKESSON & ROBBINS, INC.

No. 8066.  Decided June 9, 1943.
(172 S. W., 2d Series, 485.)

*W. W. Naman,* of Waco, and *G. H. Penland,* of Dallas, for Southwestern Drug Corp.; *Emil Corenbleth,* of Dallas, for Le-Sage and Schepps, and *Leake, Henry, Young & Golden* and *Manuel Hoppenstein,* of Dallas, for Glazer's Wholesale Drug Co., all petitioners.

It was error for the Court of Civil Appeals to hold that garnishment is a proper remedy in an alleged transfer in violation of the Bulk Sales Law where it affirmatively appears in the partition that there are two or more creditors. The Court of Civil Appeals also erred in charging petitioners as receivers in the total absence of any pleading by respondent seeking such relief. Gardner v. Goodner Wholesale Grocery Co., 113 Texas 423, 256 S. W. 911; Phillips v. Cargill, 131 S. W. (2d) 775; Texas Bank & Trust Co. v. Teich, 283 S. W. 552.

*Allen & Allen,* of Dallas, for respondent.

Where the record does not disclose that there are other creditors than the parties to the garnishment, and the facts and pleadings warrant a personal judgment, garnishment is a proper remedy to fix the personal liability of petitioners, transferees in violation of the Bulk Sales Law. Womack v. Stokes, 35 S. W. 82; United States Fidelity & Guaranty Co. v. Warnell, 103 S. W. 690; Curtis v. Henrietta Natl. Bank, 78 Texas 260.

MR. JUSTICE SHARP delivered the opinion of the Court.

McKesson & Robbins, Inc., filed this action against the Southwestern Drug Corporation and others in the nature of a garnishment proceeding after judgment, to hold defendants liable under the Bulk Sales Law, Article 4001 et seq., Vernon's Annotated Civil Statutes, for allegedly taking possession of J. C. Graham's entire stock of merchandise and converting same to their use and benefit. Upon motion of the garnishees the trial court held that McKesson & Robbins, Inc., was not entitled to judgment; but on appeal the Court of Civil Appeals reversed the judgment and remanded the cause for further proceedings with instructions. 165 S. W. (2d) 759.

We quote from the opinion of the Court of Civil Appeals, written by Chief Justice Bond, the following statement:

"Appellant, plaintiff in the court below, instituted this suit as a creditor of one J. C. Graham, against appellees, defendants, in the nature of a garnishment after judgment. In due time, appellees answered severally that they were not indebted to J. C. Graham in any amount, that they did not have in their possession any effects of J. C. Graham, and knew of no one who was indebted to, or had in his possession effects belonging to the said Graham. Their answers did not disclose the facts surrounding their posession of property removed by them from the place of business of the creditor Graham. Thereupon, appellant filed a controverting affidavit, alleging in effect, that the garnishees, before writ of garnishment was served upon them, hauled away, in truckloads and wholesale quantities, practically the whole stock of merchandise of the said J. C. Graham, doing business under the name and style of Owl Liquor Stores, and after such transfers, intermingled the merchandise so received with their own stocks, thereafter appropriating and converting the transferred property to their own use and benefit.

"The facts are undisputed. At the time of the occurrences hereinafter related, and of the institution of this suit, appellant and the appellees, except the Southwestern Drug Corporation, were creditors of J. C. Graham: Appellant, in the sum of $4,252.37; appellees, Julius Schepps Liquor Company $6,398.44; LeSage Company, $5,034.39, and the Glazer Wholesale Drug Company, $3,532.98. In October, 1940, with the knowledge and consent of J. C. Graham, and without demanding and receiving a written, sworn list of the names and addresses of Graham's creditors and the amount of indebtedness due and owing to each, and without any notice to such creditors, appellees took possession of and removed from the stock of merchandise of the said J. C. Graham assortments of whiskies and liquors, of the reasonable cash market value of approximately $13,500, as follows: Julius Schepps Wholesale Liquor Company, $5,052.-85; LeSage Company $2,861.47; Southwestern Drug Corporation, $3,449.50, and Glazer Wholesale Drug Comapny, Inc., $2,204.10; that, at the time of such transfers and removals, J. C. Graham was engaged in business under the name and style of Owl Liquor Stores, and that, at the time of such transfers and removals, said place of business contained an assorted stock of whiskies and liquors. The evidence is that the merchandise so removed was either sold or mixed and mingled, beyond identification, with appellees' respective stocks of merchandise."

The evidence tends to show that at the time of the various transfers of the goods and merchandise to the respective creditors who are petitioners herein, J. C. Graham was conducting a retail business subject to the provisions of the Bulk Sales Law, and that the removal, sale, and intermingling of the transferred goods and merchandise by petitioners was in violation of that law.

The original Bulk Sales Law was enacted in 1909. The law has been amended to meet certain contingencies. For a discussion of the history of the law we cite the case of Settegast et al v. Second National Bank et al, 126 Texas 330, 87 S. W. (2d) 1070, 102 A. L. R., p. 680. Article 4001 specifically provides the requisites necessary for the sale of a stock of merchandise, and further provides: "Any purchaser or transferee who shall not conform to the provisions of this law shall, upon application of any of the creditors of the seller or transferor become a receiver, and be held accountable to such creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale or transfer."

■ This Court has repeatedly held that if the purchaser or transferee shall not comply with the provisions of the law, upon application of any of the creditors of the seller or transferor the purchaser or transferee thereof shall become a receiver for the benefit of all creditors. Settegast et al v. Second National Bank et al, supra; Fischer et al v. Rio Tire Co. et al (Com. App.), 65 S. W. (2d) 751; Gardner v. Goodner W. G. Co., 113 Texas 423, 256 S. W. 911, 912; Texas Bank & Trust Co. v. Teich et al (Civ. App.), 283 S. W. 552 (writ denied), (Civ. App.) 286 S. W. 577.

Failure of the purchaser to comply with the Bulk Sales Law fixes his liability as that of a receiver, and he becomes bound to see that the property, or its value, is applied to the satisfaction of claims of the creditors of the seller. In other words, he becomes a trustee, charged with the duties and liabilities of a trustee. Under the law he is charged with liability only to the extent of the value of the property received by him, and his liability is to all of the creditors pro rata. Settegast et al v. Second National Bank et al, supra; Gardner v. Goodner W. G. Co., supra. However, if a purchaser or receiver disposes of or converts to his own use property acquired in violation of the Bulk Sales Law, placing it beyond the reach of creditors, he will be held personally liable for the value thereof. Settegast et al

v. Second National Bank et al, supra; Fischer et al v. Rio Tire Co.· et al, supra; Gardner v. Goodner W. G. Co., supra.

It is contended that since McKesson & Robbins, Inc., did not in its pleadings ask that petitioners or garnishees be declared receivers for the benefit of the creditors of J. C. Graham, and resorted to garnishment proceedings only, the Court of Civil Appeals erred in reversing the judgment of the trial court and remanding the cause for further proceedings.

■ The dominant purpose of the Bulk Sales Law is to protect creditors from illegal transfers. It announces certain require ments regarding the sales of stocks of goods when same are made. Such law does not undertake to prescribe in detail the method to be pursued in enforcing rights arising thereunder. It merely announces general requirements. For instance, it does not undertake to announce any rules governing the powers, duties, and liabilities of receivers described therein. However, we may resort to other articles of the Statutes for guidance upon this question. See Article 2319, Vernon's Annotated Civil Statutes, and Settegast et al v. Second National Bank et al, supra. The Bulk Sales Law as amended did not abolish garnish ment proceedings to assist in enforcing rights arising under the statute, but permits such proceedings as an additional remedy, if necessary, to enforce rights arising under the statute.

■ The Bulk Sales Law was enacted for the benefit of all creditors, and it was not intended that any one creditor should derive a superior right by instituting garnishment proceedings. All creditors of J. C. Graham should share pro rata in the goods, wares, and merchandise transferred in trust to the purchaser or puchasers thereof, or in their value.

Respondent should file in the trial court necessary pleadings disclosing the facts of this case, showing that the purchasers or garnishees in this case were liable as receivers of the goods received by them from J. C. Graham, under the Bulk Sales Law. The trial court should be furnished with pleadings and proof, if possible, showing who the creditors of J. C. Graham are, and the amounts claimed by them.

The Court of Civil Appeals reversed the judgment of the trial court and remanded this cause, with directions that when respondent's pro rata interest as a creditor of J. C. Graham is ascertained in the merchandise transferred to petitioners, respectively, in violation of the Bulk Sales Law, judgment

should be rendered for such proportionate interest in the value of the merchandise converted.

■ It appears that the judgment of the trial court was rendered on motion of petitioners at the conclusion of respondent's testimony, after respondent had rested, and before petitioners had offered any evidence. Petitioners assert that they have a meritorious defense to respondent's cause of action, and are in position to offer supporting evidence. Since the trial court was of the opinion that respondent made no case, and entered judgment against respondent upon such motion, it was unnecessary for the petitioners to offer any evidence on their defense. The case has not been fully developed, and should be remanded to the trial court for another trial. Eberstadt v. State, 92 Texas 94, 45 S. W. 1007; City of Houston v. Chapman, 132 Texas 443, 123 S. W. (2d) 652; Hunter v. Grant (Civ. App.), 41 S. W. (2d) 245 (writ refused).

This case should be reversed and remanded to the trial court for further proceedings, so that the parties hereto may amend their pleadings and offer their proof. Therefore the judgments of the trial court and Court of Civil Appeals are hereby reversed, and the cause is remanded to the trial court for a new trial.

Opinion delivered June 9, 1943.