Eldon **CORNELIUS** and Jerry Cornelius, d/b/a Bill's Auto Associate Store, Appellants,

v.

**J & R MOTOR SUPPLY CORPORATION** and Orgill Brothers & Company, Appellees.

Court of Appeals of Kentucky.

June 11, 1971.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellants.

James S. Secrest, Scottsville, for appellees.

STEINFELD, Judge.

Morris B. Costello was indebted to appellees J & R Motor Supply Corporation for $1,370.83 and to Orgill Brothers & Company for $1,491.33 for merchandise he

had purchased for his automobile accessory and appliance business. On November 22, 1966, while these debts were unpaid Costello sold his business to appellants, Eldon Cornelius and Jerry Cornelius, without complying with KRS 355.6-104 through KRS 355.6-107, sections of the Bulk Sales Law of Kentucky. The purchasers refused to pay the claims whereupon these creditors sued, demanding that the merchandise be subjected to the payment of their claims and for personal judgment.

On December 5, 1966, Costello filed a voluntary petition in bankruptcy listing appellants as general creditors. After the bankruptcy adjudication they filed proofs of claim in the bankruptcy proceeding. The referee entered an order requiring the purchasers to transfer to the trustee certain collections and all accounts receivable which they had acquired from Costello at the time of the purchase from him, holding that the accounts receivable were a part of the bankruptcy estate. The parties stipulated that the order made by the bankruptcy court was proper and that the bankrupt's estate was insufficient to satisfy his creditors.

We are not informed whether the trustee in bankruptcy sought recovery against the purchasers. It seems agreed, and we will assume that the transferred merchandise had become so intermingled with other goods that tracing was impossible.

Personal judgments against the Corneliuses for the full amounts of the claims was entered from which this appeal was sought and granted. The questions before us are whether personal judgments were proper, the amounts for which judgments should have been entered if plaintiffs below prevail and whether filing of the claims in the bankruptcy proceeding precluded the creditors from prosecuting the suits.

KRS 355.6-104 declares that "* * * a bulk transfer subject to this article is ineffective against any creditor * * * unless: (a) The transferee requires the transferor to furnish a list of his existing

creditors * * *" prepared as statutorily required.

KRS 355.6-105 provides:

"In addition to the requirements of KRS 355.6-104, any bulk transfer subject to this article except one made by auction sale (KRS 355.6-108) is ineffective against any creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons hereafter provided (KRS 355.6-107). (1958 c. 77, § 6-105. Effective July 1, 1960.)"

KRS 355.6-106 provides:

"In addition to the requirements of KRS 355.6-104 and KRS 355.6-105:

(1) Upon every bulk transfer subject to this article for which new consideration becomes payable except those made by sale at auction it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor which are either shown on the list furnished by the transferor (KRS 355.6-104) or filed in writing in the place stated in the notice (KRS 355.6-107) within thirty days after the mailing of such notice. This duty of the transferee runs to all the holders of such debts, and may be enforced by any of them for the benefit of all.

(2) If any of said debts are in dispute the necessary sum may be withheld from distribution until the dispute is settled or adjudicated.

(3) If the consideration payable is not enough to pay all of the said debts in full, distribution shall be made pro rata. (1958, c. 77, § 6-106. Effective July 1, 1960)."

The intent of the Bulk Sales Law is to protect the rights of all creditors existing at the time of the transfer. See 2 Uniform Laws Annotated, Uniform Commercial Code, section 6-106 at page 476.

We now approach the question of whether a personal judgment was authorized.[1] We believe the act did not so contemplate except under special circumstances. As stated in 6 Corbin, Contracts, sections 1514 at 977–8 (1951), the ordinary bulk sales statute " * * * merely makes it (the sale) voidable against both parties for the benefit of creditors." With respect to section 6–104 the Official Code Comments state: "Any such creditor or creditors may therefore disregard the transfer and levy on the goods as still belonging to the transferor, or a receiver representing them can take them by whatever procedure the local law provides." The status of the buyer is as a trustee or receiver for the benefit of creditors of the seller existing at the time of the sale. The rule is well expressed in Southwestern Drug Corp. v. McKesson & Robbins, 141 Tex. 284, 172 S.W.2d 485, 155 A.L.R. 1056 (1943):

"Failure of the purchaser to comply with the Bulk Sales Law fixes his liability as that of a receiver, and he becomes bound to see that the property, or its value, is applied to the satisfaction of claims of the creditors of the seller. In other words, he becomes a trustee, charged with the duties and liabilities of a trustee. Under the law he is charged with liability only to the extent of the value of the property received by him, and his liability is to all of the creditors pro rata. Settegast et al. v. Second National Bank, et al., supra [126 Tex. 330, 87 S.W.2d 1070]; Gardner v. Goodner W. G. Co., supra [113 Tex. 423, 256 S. W. 911]. However, if a purchaser or receiver disposes of or converts to his own use property acquired in violation of the Bulk Sales Law, placing it beyond the reach of creditors, he will be held personally liable for the value thereof. Settegast et al. v. Second National Bank et al., supra; Fischer et al. v. Rio Tire Co. et al., supra [Tex.Com.App., 65 S.W.2d 751]; Gardner v. Goodner W. G. Co., supra."

From the foregoing and the rationale of other cases and texts we will refer to we conclude that since the purchasers so comingled the merchandise that it could not be segregated personal liability ensued. Orgill Brothers v. Gee, 152 Miss. 590, 120 So. 737 (1928); Smith v. Boyer, 119 S.C. 176, 112 S.E. 71 (1922) and Grogan Lord & Co. v. Cameron Mfg. Co., Tex.Civ.App., 256 S.W.2d 996 (1953).

The Bulk Sales Law is not new in this state. The provisions of the present act are quite similar to our earlier one therefore the teachings of cases decided before the enactment of the Uniform Commercial Code are helpful.

We said in First National Bank of Louisville, Ky., v. Walling, Ky., 264 S.W. 2d 876 (1954): "The purpose of this Act was to provide that the entire stock of merchandise purchased should be held in trust for all creditors who had sold merchandise to the seller, to be distributed in proportion to their respective claims." Riedling v. Ross, 213 Ky. 187, 280 S.W. 923 (1926), held that a noncomplying purchaser was liable to creditors for the fair value of the property bought. We concluded under the facts in Riedling that the purchaser was personally liable to the appellees for the amount of their claims. Also see Dwiggins Wire Fence Co. v. Patterson, 166 Ky. 278, 179 S.W. 224 (1915).

In Security National Bank of Springfield v. General Motors Corp., 345 Mass. 434, 187 N.E.2d 820, 825 (1963), it was written:

"It follows that the court below erred in failing to set aside one sale under the sales in bulk act. The plaintiff is entitled to have the decree provide effective machinery to apply the stock of merchandise pro rata with other creditors, if any there are, to the plaintiff's claim, or its value if it is no longer existent or available."

1. It was not contended that the Bankruptcy Court was the proper forum to determine the rights of the parties. See re: Dee's, Inc. (D.C.Pa.) 164 F.Supp. 402.

We subscribe to the law as analyzed in 37 C.J.S. Fraudulent Conveyances, § 484, p. 1349 to-wit:

"Stated generally, a purchaser in violation of the Bulk Sales Act acquires no rights in the property purchased as against the creditors of the seller.

His status is generally considered, the statute sometimes expressly so providing, to be that of a trustee or receiver for the benefit of all the creditors of the seller, existing at the time of transfer. As such he is responsible for the disposition of the property, and is liable to account therefor to the extent of its fair value, even though the purchase was made in good faith. The purchaser's liability, however, does not exceed the amount of the indebtedness actually due even though the value of the property exceeds such amount. The fact that he has mingled the goods with his own so as to destroy their identity, or that he has resold the property, does not divest him of his liability to creditors, but on the contrary * * * operates to impose a personal liability.

The liability as a trustee or receiver is to all the creditors pro rata. Hence application by the seller or buyer of the proceeds of a bulk sale to the payment of some of his creditors does not affect the buyer's liability to other creditors who received none of the proceeds for their pro rata share."

■ The measure of recovery under the circumstances was the fair market value of the merchandise. Ford v. Consolidated Grocery, 229 Ky. 510, 17 S.W.2d 448 (1929). See also 37 C.J.S. Fraudulent Conveyances § 484(b). The purchase price must be reduced by a determination of the proportionate part which was paid for the accounts receivable as they were surrendered to the Trustee in Bankruptcy along with the collections which the purchaser made thereon.

■ Since no question was raised that the amount paid was not the fair value it established the maximum liability to all then existing creditors. Cf. Montgomery v. Koch, Ky., 251 S.W.2d 235 (1952); Musselman v. Grossman, 46 Idaho 780, 271 P. 462 (1928); and Waterman v. Perrotta, 144 Colo. 117, 355 P.2d 313, 85 A.L.R.2d 1208 (1960). The appellees were entitled to judgment merely for their pro rata share determined on the basis of the creditors existing when the sale was consummated. Bomanzi of Lexington, Inc. v. Tafel, Ky., 415 S.W.2d 627 (1967); Texas Bank & Trust Co. v. Teich, Tex.Civ.App., 283 S.W. 552 (1926). Also see 2 Anderson's Uniform Commercial Code, page 199 which points out that the existing, as distinguished from future creditors, are to share, and annotations in 41 A.L.R. 1478 and 61 A.L.R. 364.

■ The creditors are not to be penalized for filing their respective claims in the bankruptcy proceedings. Gwinn Brothers & Co. v. Peoples General Store, 269 Ky. 813, 108 S.W.2d 1001 (1937). A dividend may be received and if so credit should be given but only to the extent of preventing the two creditors from recovering more than their respective claims in full.

The judgment is reversed for proceedings consistent herewith.

All concur.