This is an appeal by the appellant-plaintiff from a judgment of the Circuit Court of Madison County. That order found in favor of the appellee-defendant on the plaintiff's complaint and further found for the defendant on its counterclaim against the plaintiff and assessed damages at $1,585.10.
A review of the facts, as revealed by the record, is necessary for an understanding of the issues in this case.
Short Stop Stores, Inc., [hereinafter SSS] obtained a loan for $10,000 from the defendant — First Alabama Bank in May 1976. That same day, SSS gave the defendant a security interest in inventory. The financing statement filed in conjunction with the security agreement stated that it covered "all inventory and fixtures now owned by Short Stop Stores, Inc. presently located at # 3, Highway 20 Madison, Alabama."
On August 10, 1976, the plaintiff entered into a contract with SSS to purchase two of *Page 570 
SSS's stores. The plaintiff paid $14,000 for both of these stores. One of the stores included in the purchase agreement was the Madison store; the one made the subject of the above noted security agreement.
At the time plaintiff took over the stores, approximately September 20, 1976, an independent inventory specialist took a physical inventory of the Madison store. The retail value of the inventory at that date was established to be $6,147.
Contemporaneous with the taking over of the stores, the plaintiff opened a bank account in the name of Get It Kwik Store No. 8, i.e., old SSS Madison store, at the defendant's place of business. In November, plaintiff wrote a check on that account for $4,561.90. The check was subsequently returned to the plaintiff and was stamped "insufficient funds." At the time the check was written, the account did in fact have sufficient funds to cover the check. The check never cleared the bank because the defendant-bank had taken all of the funds out of the account and applied them to the debt of SSS.[1]
Plaintiff then filed a complaint against defendant seeking repayment of $4,561.90 for the refusal by defendant to honor the check of plaintiff. Defendant filed a counterclaim along with its answer alleging conversion of certain items of inventory and equipment by the plaintiff. In its counterclaim, the defendant sought $15,000 in damages. As noted above, the issues involved in the complaint of the plaintiff were found in favor of the defendant and on the counterclaim of the defendant the trial court found the issues in favor of the defendant and against the plaintiff and assessed the damages at $1,585.10.
At this point, we would note that the verdict returned in favor of the defendant plus the amount previously withheld from plaintiff's account amounted to the retail value of the inventory at the Madison store at the time plaintiff took control.
Plaintiff appeals, setting forth two issues for our resolution. First, did the trial court err to reversal in finding that defendant had a right to withdraw funds from plaintiff's account? Implicit in this issue is the right of the plaintiff to recover the funds withdrawn from its account. Second, did the court err in finding that plaintiff had converted certain property subject to a security agreement held by the defendant?
As to the first issue, the defendant contends, at trial and on appeal, that the transfer of inventory from SSS to plaintiff was fraudulent and void as to defendant because of the failure of plaintiff to comply with the notice provision of art. 6, the Bulk Transfer article of U.C.C. [Code of Ala. 1975, § 7-6-101, et seq.]. Defendant argues that, due to the above, title to the inventory would still be in SSS and the money derived from the retail sale of the inventory, i.e., funds in plaintiff's bank account, would belong to SSS. By virtue of this, defendant contends it had a right to apply these funds to the debt of SSS.
Put another way, since the transfer was ineffective as against the defendant, the defendant argues it had a right under its security agreement with SSS to apply the money on deposit with the defendant, representing money received from the sale of the inventory, to the satisfaction of the debt.
The second issue involves the defendant's counterclaim which set forth a theory of conversion. Specifically, defendant had a perfected security interest in the inventory belonging to SSS. By virtue of this security interest, defendant contends it had a right to possession of the inventory due to the default by SSS on its note. Defendant further argues that the property was converted by plaintiff as a result of it selling the inventory at retail.
 I
Code of Ala. 1975, § 7-6-104, in pertinent part, states that: *Page 571 
 "(1) Except as provided with respect to auction sales (section 7-6-108), a bulk transfer subject to this article is ineffective against any creditor of the transferor unless:
 "(a) The transferee requires the transferor to furnish a list of his existing creditors prepared as stated in this section; and
 "(b) The parties prepare a schedule of the property transferred sufficient to identify it; and
 "(c) The transferee preserves the list and schedule for six months next following the transfer and permits inspection of either or both and copying therefrom at all reasonable hours by any creditor of the transferor, or files the list and schedule in the office of the secretary of state.
. . . . .
 "(3) Responsibility for the completeness and accuracy of the list of creditors rests on the transferor, and the transfer is not rendered ineffective by errors or omissions therein unless the transferee is shown to have had knowledge."
The record shows that plaintiff asked SSS for a breakdown of creditors but the defendant was not on the list. Although there is testimony to indicate plaintiff attempted compliance with the Bulk Sales Act, no other proof was offered to show full compliance with § 7-6-104 (1).
As noted above, defendant argues that such noncompliance with the Bulk Sales Act renders the transfer ineffective and enables the defendant to rightfully apply the plaintiff's money on deposit to satisfy SSS's debt. We cannot agree.
The court in Darby v. Ewings Home Furnishings, 5 UCC Rep. 198, 278 F. Supp. 917 (DCWD Okla. 1967), held that § 6-106 of the U.C.C. renders a transferee personally liable to creditors of the transferor for the value of the property purchased or the amount paid if there is a failure to comply with the bulk transfer provisions.
However, § 6-106 was not adopted by Alabama and thus has no applicability in the present case.
The law is clear that a bank's right to set-off or apply funds exists only where, with respect to both debt and deposit, the bank and depositor are in a debtor-creditor relationship and there is a mutuality of demands. See Kaufman v. FirstNational Bank of Opp, Alabama, 493 F.2d 1070 (5th Cir. 1974).
In this case, the plaintiff was not in a debtor-creditor relationship with the defendant as concerns both the deposit and the debt. The debt was between SSS and the defendant; plaintiff did not assume the debt nor place itself in a position to be deemed a debtor as to the defendant so as to allow defendant to apply its funds.
Further, the situation involved here does not give rise to the imposition of a banker's lien. To justify the lien, there must be credit given upon the faith of the deposit then on hand. In such cases, if the debt to the bank is past due, it may, without the consent of the depositor, apply a deposit to the past due indebtedness. See Bank of Guntersville v. Crayter,199 Ala. 599, 75 So. 7 (1917).
Put another way, a "banker's lien" has been defined as a lien which attaches in favor of the bank, on the securities and moneys of the customer deposited in the usual course of business, for advances made on his credit or for existing indebtedness of the depositor to the bank. See 22 ALR.2d 478, § 2; 9 C.J.S. Banks and Banking § 309.
As the record clearly reveals, the plaintiff had no credit extended to it by virtue of its deposit nor did the plaintiff have any debt outstanding with the defendant. A banker's lien could not therefore arise under this situation.
Noncompliance with the Bulk Transfer Act merely made the transfer ineffective as to defendant, the secured creditor. The defendant retained his right to the collateral and/or any proceeds resulting from its disposition. Defendant therefore retained his preferred position as a secured creditor notwithstanding the transfer from *Page 572 
SSS to plaintiff. However, the fact that the transfer is rendered ineffective as to the defendant does not per se expose the plaintiff to personal liability on the debt owed by SSS merely because plaintiff was the transferee.
Although the note executed in conjunction with the security agreement issued by SSS to the defendant contained the following,
 "Upon default (`default' being hereinafter defined), or Secured Party deeming itself insecure, the unpaid balance of this debt shall, at Secured Party's option, become immediately due and payable and Secured Party is hereby authorized to apply at default, on, or after maturity, to the payment of this debt, any funds or security at the bank at which this note is payable, belonging to the makers, sureties, endorsers, guarantors, or any of them. . . .",
such does not allow the defendant to take such actions against plaintiff. The plaintiff was not a party to the agreement; did not assume the note and the mere fact that the Bulk Transfer Act was not fully complied with does not render plaintiff susceptible to such a remedy.
Even though Code of Ala. 1975, § 7-9-201, states that a security agreement is effective against purchasers of the collateral, the terms of the security agreement, such as applying funds, are not effective against such purchasers. The terms of the security agreement are effective as between the parties to the agreement. The security agreement is, however, effective against purchasers of the collateral in the context of protecting the secured party's interest by allowing repossession of the collateral or allowing an action for conversion. See Official Comments, Code of Ala. 1975, § 7-9-306.
Defendant next argues that the funds in plaintiff's account were the proceeds from the sale of the inventory by the plaintiff. Defendant further contends that it had a right to apply those proceeds to the debt since it also had a secured interest in those proceeds. Defendant relies on § 7-9-306 (2) as follows, for its argument:
 "(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the security party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." [Emphasis supplied.]
It is clear to this court that "proceeds", within the context of art. 9, does not mean proceeds from the sale of the collateral by the transferee. Proceeds means the payment or agreed upon exchange by the transferee to the transferor for the purchase of the collateral. In the present case, the plaintiff bought two stores from SSS for approximately $14,000. Testimony at trial revealed that approximately $8,000 of that sum could be attributed to the Madison store. It is that sum received by the debtor-transferee from the sale of the collateral which is deemed to be "proceeds" of the collateral and not the price the transferee, i.e., plaintiff in this instance, receives when he ultimately sells the goods at retail.
In view of this, we cannot say the defendant had a right to withdraw funds from the plaintiff's account to apply them against the debt of SSS. The fact that plaintiff purchased collateral which was the object of a perfected security agreement does not make plaintiff's funds subject to withdrawal by the holder of such security agreement.
The trial court therefore was in error in finding for the defendant on plaintiff's complaint. The plaintiff had in fact established the defendant wrongfully dishonored its check due to defendant's lack of legal right to apply the funds.
 II
As to the second issue, the plaintiff contends the trial court erred in awarding defendant damages based upon the following counterclaim:
 "Comes now the Defendant, First Alabama Bank, and having fully answered *Page 573 
the Complaint heretofore filed by the Plaintiff would file this its Counterclaim against the Plaintiff as follows:
 "1. On or about the 5th day of May, 1976, the Plaintiff converted to its own use various and sundry items of inventory located at 5116 Governors Drive, West, in Huntsville, Alabama, and one NCR Model 6000 cash register, one 10 by 12 by 7 1/2 ft. walk-in cooler with glass doors and shelves and 1 1/2 horse power unit cooler motor, one Warren 4-door reach in cooler, 32 feet of Dixiecraft shelving, one checkout counter 10 feet in length, one 4-ton air conditioner, one master built 2-door reach-in cooler Model 560 and 28 feet of Condoles shelving, which property and inventory was subject to a valid security interest in favor of the Defendant, said security interest being properly recorded in the Probate Office of Madison County, Alabama.
 "WHEREFORE, Defendant demands judgment against the Plaintiff in the sum of $15,000, interest and costs."
In most cases when a debtor makes an unauthorized disposition of collateral, the security interest continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or, in an appropriate case, maintain an action for conversion. See 4 Anderson Uniform Commercial Code § 9-306:1 [2d Ed.].
The security agreement, as entered into by SSS and defendant, stated in § 2 that "the possession by debtor of inventory shall be for purposes of storing and exhibiting inventory for retail sale in the ordinary course of business." The agreement further stated in § 4 that the "Debtor shall not transfer or otherwise dispose of inventory, except as provided in section 2."
In view of the above, the sale of the inventory by SSS to plaintiff was an unauthorized disposition in that the sale was out of the ordinary course of business. This is especially true in view of the fact of noncompliance with the Bulk Transfer Article. The security interest therefore continued in the original collateral in the hands of the plaintiff.
Testimony reveals that on the date the plaintiff resold the inventory to the public, the note of SSS was in default. By virtue of the default, the defendant under Code of Ala. 1975, § 7-9-503, had the right to immediate possession of the inventory and was therefore entitled to maintain an action for conversion due to the selling of the collateral by the plaintiff. See 8U.C.C. Case Digest § 9503.25.
At this point, plaintiff argues that the security interest covered only the inventory present at the Madison store on the date the security agreement was executed. Specifically, the plaintiff relied on the financing statement filed in conjunction with the security agreement which stated that it covered "all inventory and fixtures now owned by Short Stop Stores, Inc. presently located at # 3, Highway 20 Madison, Alabama." Along the same line, plaintiff contends the inventory covered by the agreement only extended to that which was in the store at that date and did not include any inventory acquired thereafter.
The vast majority of jurisdictions hold that when a security interest is taken in the inventory of a business, after acquired inventory is automatically covered unless it is clearly set out that only certain items of inventory are to be covered. See In re Nickerson Nickerson, Inc., 9 USS Rep. 886,329 F. Supp. 93 (DCD Neb. 1971).
As the court in In re Page, 16 UCC Rep. 501, 504, (DCMD Fla. 1974), stated:
 "Needless to say, any reasonable secured party would be fully aware that this type of business presupposes a constant change in the inventory. Therefore, it is obviously unreasonable to assume that anyone would have received or acquired or intended to acquire a security interest in an inventory with the rigid limitation that it should be limited to the same items which made up the inventory on the date the document was executed." *Page 574 
This approach is consistent with the general liberal philosophy of the U.C.C. and is certainly the prevailing and accepted commercial practice in financing retail merchandising businesses.
In summary, defendant had a security interest in the collateral which continued even though it was sold to plaintiff. At the time plaintiff took over the store and started selling the collateral, the note of SSS was in default. Code of Ala. 1975, § 7-9-503, entitled defendant to an immediate right to possess the inventory because of this default. In accordance with the general law in Alabama underState Farm Mutual Automobile Ins. Co. v. Wagnon, 53 Ala. App. 712, 304 So.2d 216 (1974), defendant was entitled to maintain an action for conversion by virtue of its immediate right to possession of the collateral. The inventory was sold by the plaintiff which, according to Richard Kelly Chevrolet, Inc. v.Williams, Ala.Civ.App., 343 So.2d 776 (1977), is proof of conversion.
In view of this, we cannot say the trial court erred to reversal in finding for the defendant on its counterclaim of conversion.
The above being dispositive of the issues in this cause, the judgment of the trial court finding for the defendant on the plaintiff's complaint is reversed and remanded for the entry of a judgment not inconsistent with this opinion. The judgment of the trial court finding for the defendant on its counterclaim of conversion is due to be and is hereby affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and BRADLEY, J., concur.
 ON REHEARING
The appellee in his application for "rehearing and/or clarification of decision" requests this court to direct that the trial court enter a judgment in the amount of $6,147 in favor of the appellee-bank and against the appellant. This requested judgment is based on the appellee's complaint of conversion.
It is the appellee's contention that in view of the trial court's original action, as can be discerned from our opinion, it was clearly the trial court's "intent" that the appellee recover the full amount of the converted inventory.
Quite frankly, and for whatever benefit that it might be, this court anticipated that the problem as presented by the appellee would arise. Unfortunately, our anticipation of the problem does not necessarily mean we have an acceptable solution.
In view of the learned and distinguished trial judge's original judgment, the record before this court, and the issues presented to this court, we cannot direct the trial court to enter the judgment as requested by the appellee.
We would note, however, that the thrust of our original mandate is for the trial court to enter a judgment not inconsistent with our opinion. What is consistent with our opinion is a matter, in the first instance, for the trial court to determine.
THE ORIGINAL OPINION IS HEREBY EXTENDED AND THE APPELLEE'S APPLICATION FOR REHEARING AND/OR CLARIFICATION OF DECISION IS OVERRULED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] There is testimony to indicate that SSS's loan was in default at the time plaintiff took over operation of the stores in September, 1976.