**BILL VOORHEES COMPANY, INC.,
Plaintiff-Appellant,**

v.

**R & S CAMPER SALES OF BIRMINGHAM, INC. and R & S Camper Sales, Inc., Defendants-Appellees.**

**No. 77–2340.**

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1979.

Rehearing and Rehearing En Banc
Denied Dec. 19, 1979.

---

John M. Heacock, Jr., Huntsville, Ala., for plaintiff-appellant.

Aubrey O. Lammons, Huntsville, Ala., for R & S Camper Sales, Inc.

Before COLEMAN, RONEY and FAY, Circuit Judges.

FAY, Circuit Judge:

This diversity action concerns the personal liability of a transferee under the Alabama enactment of article 6 of the Uniform Commercial Code, the Alabama Bulk Transfers Act, Ala.Code tit. 7, §§ 7–6–101 to –111 (1975). The district court held that a transferee who fails to give notice to creditors as required under section 7–6–105 is not personally liable to the transferor's unpaid and unnotified creditors for the value of transfer property no longer held by the transferee. From this judgment, the plaintiff-creditor appeals. We affirm.

R & S Camper Sales of Birmingham, Inc. (the Birmingham corporation) and R & S Camper Sales, Inc. (the Huntsville corporation) are separate entities. In oral argument, counsel for appellee stated that after problems arose within the original R & S corporation, the Birmingham group split off from the Huntsville corporation. The corporations share the same officers and directors, though they serve in different capacities.

Bill Voorhees Company, Inc. (Voorhees), plaintiff-appellant, sold trailers and campers to the Birmingham corporation on unsecured credit. Most of the Birmingham corporation's inventory and equipment, including that sold by Voorhees, constituted collateral under a blanket security agreement covering a debt of over $100,000 with Central Bank of Alabama. In 1976, the bank discovered that the Birmingham corporation had violated its security agreement by failing to forward proceeds to the bank after selling campers. After meeting with the bank's vice-president, the Birmingham corporation agreed to go out of business. Without giving notice to creditors or otherwise complying with article 6, the Birmingham corporation transferred all its inventory to the Huntsville corporation. Subsequently Huntsville sold all but eight units of the inventory to third parties at prices

that approximated market value, deducted a ten percent commission, and directly paid off the bank's secured claim. Appellant does not contest the bank's superior right to this $100,000. The Huntsville corporation, however, also realized an additional $36,000 from the sales, which it turned over to the Birmingham corporation. The Birmingham corporation paid other creditors with the $36,000, leaving appellant Voorhees' claim unsatisfied. Voorhees sued, alleging violations of the Bulk Transfers Act.[1] The district court held that the Birmingham corporation owed Voorhees $31,158.40, that the bulk sale did not comply with article 6, that Voorhees could levy upon approximately eight items still in the hands of the Huntsville corporation, and that Voorhees could recover property from any third-party purchasers who paid no value or who bought with notice of the noncompliance. Neither party contests these decisions. The district court also held, however, that the Huntsville corporation is not personally liable for the value of the trailers that it has already sold to good faith purchasers.

Appellant Voorhees argues that when a transferor and transferee do not comply with the notice provisions of article 6, the creditor should have recourse against the transferee personally for the value of the dissipated property, in addition to the creditor's right to levy on remaining property.

■■■ Under *Erie,* our duty is to determine how the Supreme Court of Alabama would rule on transferee liability. Before turning to what little law exists on the subject, it may be helpful to outline the possible bases for such liability. Theoretically, a money judgment against a transferee when bulk transfer property has been resold might take four forms: the transferee could be liable (1) on the transferor's debt, (2) for conversion, (3) for traceable funds, or (4) for the value of the dissipated property. As to the first possibility, all

agree that the transferee's noncompliance with article 6 does not impose liability for the transferor's original debt. *E. g., Get It Kwik of America v. First Alabama Bank,* Ala.App., 361 So.2d 568 (1978); *Cornelius v. J & R Motor Supply Corp.,* 468 S.W.2d 781 (Ky.App.1971). *See* J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 655 (1972). To sue for conversion, a creditor must have a right to possession. *E. g., Charles S. Martin Distributing Co. v. Indon Industries, Inc.,* 134 Ga.App. 179, 213 S.E.2d 900 (1975), *rev'd on other grounds,* 234 Ga. 845, 218 S.E.2d 562 (1975). Voorhees was not a secured creditor and has no claim for possession, so conversion is not at issue here. The third theory can involve two types of traceable funds: the initial purchase price the transferee pays the transferor, or the receipts the transferor collects upon resale of the property to third parties. Here, for the most part, both funds are the same because the Huntsville corporation paid the Birmingham corporation only after resale to consumers. Evidently all monies paid to the Birmingham corporation have been dispensed to other creditors and are not traceable. The ten percent commission the Huntsville corporation retained is, therefore, the only fund that might be recoverable, but the record does not reflect whether these funds are actually traceable and appellant has not pursued this issue on appeal. The final theory for imposing a money judgment is, therefore, Voorhees' only possible theory for recovering a money judgment against the Huntsville corporation. The transferee would have to be held liable for the value of the property which it has resold and for which proceeds are not traceable.

Unfortunately, article 6 does not detail remedies for its breach, and the comments supply little evidence of the drafters' intentions. A noncomplying transfer is "ineffec-

---

1. The district court did not find a fraudulent conveyance, and appellant did not allege one occurred in its complaint. This is not a case in which a corporation is selling its stock at substantially less than its worth nor is it a situation in which the debtor has pocketed all the proceeds and disappeared. *See* U.C.C. § 6–101, comments 2–4. The defendants attempted to consign the inventory but by failing to observe the formalities they conducted a bulk sale without complying with the notice provisions.

tive." U.C.C. §§ 6–104, –105. The Official Comments only mention actions against the property as possible remedies: levy or appointment of a receiver to take the goods under local procedures. U.C.C. § 6–104, comment 2; § 6–111, comment 2. Actions against the transferee personally are conspicuous by their absence. The drafters' concern that the sections created a "trap for the unwary" and "unusual obligations" on even a good faith transferee might indicate a desire to limit the drastic remedies of article 6 to in rem actions against the property and proceeds.

Despite the lack of direction from the code, most of the few courts deciding whether to impose money judgments have held transferees liable for the value of dissipated or commingled bulk transfer property. *Darby v. Ewings Home Furnishings*, 278 F.Supp. 917 (W.D.Okl.1967); *Moskowitz v. Michaels Artists and Engineering Supplies, Inc.*, 29 Colo.App. 44, 477 P.2d 465 (1970); *Cornelius v. J & R Motor Supply Corp.*, 468 S.W.2d 781 (Ky.App.1971); *Starman v. John Wolfe, Inc.*, 490 S.W.2d 377 (Mo.App.1973). *See Bomanzi of Lexington, Inc. v. Tafel*, 415 S.W.2d 627, 631 (Ky.App. 1967); *National Bank of Royal Oak v. Frydlewicz*, 67 Mich.App. 417, 241 N.W.2d 471

(1976). *See generally* Commentary, *Article 6: Rights of an Aggrieved Creditor of a Bulk Transferor*, 10 B.C.Indus. & Com.L. Rev. 281 (1969); Annot., 47 A.L.R.3d 1114, 1142 (1973). In essence, the transferee is treated like a trustee who must account for the bulk property or be held accountable for the proceeds of its sale.

Some courts have decided to hold the transferee accountable because of the legislature's adoption of optional section 6–106. *E. g., Darby v. Ewings Home Furnishings*, 278 F.Supp. 917 (W.D.Okl.1967). That section directs the transferee to assure that the bulk sale proceeds are first applied to pay the transferor's debts,[2] but it does not really address this situation, in which the parties totally failed to comply with the Act. It does, however, evidence a legislative intention to treat the transferee like a trustee for some purposes. *See* U.C.C. § 6–101, comment 3.

Section 6–106 was not, however, adopted in Alabama. Prior to Alabama's adoption of the Uniform Commercial Code, transferees held the proceeds of bulk transfers in trust for creditors. 1911 Ala.Acts 94, 1949 Ala.Acts 447 (repealed 1966). *See Roberts v. Norrell*, 212 F.Supp. 897 (N.D.Ala.1963).[3]

---

**2.** Optional section 6–106 reads as follows:

*Application of the Proceeds*

In addition to the requirements of the two preceding sections:

(1) Upon every bulk transfer subject to this Article for which new consideration becomes payable except those made by sale at auction it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor which are either shown on the list furnished by the transferor (Section 6–104) or filed in writing in the place stated in the notice (Section 6–107) within thirty days after the mailing of such notice. This duty of the transferee runs to all the holders of such debts, and may be enforced by any of them for the benefit of all.

(2) If any of said debts are in dispute the necessary sum may be withheld from distribution until the dispute is settled or adjudicated.

(3) If the consideration payable is not enough to pay all of the said debts in full distribution shall be made pro rata.

*Optional Subsection (4)*

(4) the transferee may within ten days after he takes possession of the goods pay the consideration into the (specify court) in the county where the transferor had its principal place of business in this state and thereafter may discharge his duty under this section by giving notice by registered or certified mail to all the persons to whom the duty runs that the consideration has been paid into that court and that they should file their claims there. On motion of any interested party, the court may order the distribution of the consideration to the persons entitled to it.

**3.** The question of transferee liability also arose under the original Bulk Sales Acts. The original Acts did not expressly impose liability. The uncertainty over whether transferees became receivers of the property led legislatures to enact provisions specifically making transferees trustees. *See Settegast v. Second National Bank*, 126 Tex. 330, 87 S.W.2d 1070, 1072 (1935). Alabama also enacted a later amendment imposing trusts on transferees. 1949 Ala.Acts 447 (repealed 1966). It is unclear why the 1949 amendment was enacted, but its adoption may indicate that the Alabama

A transferee of a fraudulent conveyance held the property in constructive trust and was liable to creditors for the value of disposed property. *E. g., First National Bank of Birmingham v. Love,* 232 Ala. 327, 167 So. 703 (1936); *Dickinson v. National Bank of Republic,* 98 Ala. 546, 14 So. 550 (1893). This earlier law, however, was repealed with the adoption of the Uniform Commercial Code. Ala.Code tit. 7, § 7–10–103 (1975). We must look, therefore, to more recent Alabama case law on whether money judgments can be imposed on transferees.

Two Alabama court decisions have touched on the issue of money judgments against transferees, although neither expressly decided whether a transferee is liable for the value of dissipated bulk property. In *Get It Kwik of America v. First Alabama Bank,* Ala.App., 361 So.2d 568 (1978), the Alabama Court of Civil Appeals considered the three other theories of liability in deciding a bank's right to set off a transferee's bank account against the transferor's debt after a partially noncomplying bulk sale. The court held that a transferee is not liable on the debt, but can be liable to a secured creditor for conversion. Under its definition of "proceeds," it also held that a secured party did not have a security interest in the funds received from sale of the collateral by the transferee. It did not discuss liability under normal tracing rules, which might have governed recovery of the ten percent commission in this case. Whether a transferee was liable under article 6 for the value of property was not at issue in *Get It Kwik*; however, the court did mention the topic:

> legislature believes legislative authority is necessary before trusts are imposed on transferees.

4. Analogizing to the *Darby* decision, the Georgia Court of Appeals also held that Georgia's failure to adopt optional section 6–106 was evidence of a legislative intent that transferees should not be personally liable. *American Express Company v. Bomar Shoe Company,* 125 Ga.App. 408, 187 S.E.2d 922 (1972), *aff'd on rehearing,* 127 Ga.App. 837, 195 S.E.2d 479 (1973).

The court in *Darby v. Ewings Home Furnishings,* 5 U.C.C.Rep. 198, 278 F.Supp. 917 (D.C.W.D.Okl.1967), held that § 6–106 of the U.C.C. renders a transferee personally liable to creditors of the transferor for the value of the property purchased or the amount paid if there is a failure to comply with the bulk transfer provisions.

However, § 6–106 was not adopted by Alabama and thus has no applicability in the present case.

361 So.2d at 571. This statement may be evidence that the Alabama courts would not hold the Huntsville corporation liable.[4]

The second decision is by the Supreme Court of Alabama. In *McKesson Robbins v. Bruno's Inc.,* Ala., 368 So.2d 1 (1979), the supreme court reversed, under Alabama Rule 8, the dismissal of a creditor's complaint against a transferee and another creditor. The court stated the issues as whether the complaint stated a cause of action against the transferee for participating in a scheme to hinder collection of the plaintiff's debt, and whether the creditor had "any action against the transferee" for failing to comply with article 6. On rehearing the court stressed that it was not holding that the bulk sales act had been violated, but that a complaint alleging participation " 'in a scheme, artifice or device to hinder or delay [a creditor] in the collection of a debt' is more than 'the bare bones of pleading.' " By its failure to grant summary judgment on the article 6 cause of action, the Alabama court did hold that article 6 grants a creditor some rights against a transferee. Just what whose rights are, however, and whether those rights might be limited to in rem actions against property held by the creditor, was left unanswered.

The court, however, was evidently holding that a transferee was not liable on the *debt,* as opposed to liability for the *value* of property, because it went on to state that the transferee held the proceeds from resale in trust and could be garnished by the transferor's creditor. For a later decision holding that article 6 does impose obligations on the transferee for breach, see *Indon Industries, Inc. v. Charles S. Martin Distributing Co., Inc.,* 234 Ga. 845, 218 S.E.2d 562 (1975).

We are in the difficult position, therefore, of deciding a state law question when the statute is almost silent, the court decisions are not definitive, and prior remedial law on point has been repealed. In addition, the few indications we have of what the drafters' intended and what the courts would decide seem contrary to the trend of decisions in other states. Although normally other Uniform Commercial Code decisions might be given great weight in the interest of uniformity, the remedy sections of article 6 were purposefully left open for nonuniform state provisions. *See* U.C.C. § 6–111, comment 2.

In light of the lack of mention of actions against transferees in the statute, the repeal of pre-existing remedial legislation, the Alabama legislature's failure to adopt section 6–106, and the statements of the Alabama court in *Get It Kwik*, we agree with the trial court's *Erie* guess and conclude that under Alabama law transferees are not personally liable for the value of disposed bulk property to a creditor who does not receive notice of the bulk sale.

The decision of the district court is AFFIRMED.