**ANDERSON & CLAYTON CO., a corporation, Appellant,**

v.

**Ronnie J. EARNEST, individually, and d/b/a Earnest Feed, Appellee.**

**No. 9207.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 31, 1980.

Robert R. Sanders & Associates, Art Baker, Amarillo, for appellant.

Gassaway, Gurley, Sheets & Mitchell, Jody G. Sheets, Borger, for appellee.

COUNTISS, Justice.

This is a suit under the Uniform Commercial Code—Bulk Transfers Act, Tex. Bus. & Com.Code Ann. §§ 6.101, et seq. (Vernon 1968).[1] Anderson and Clayton Co. (hereafter "ACCO") sought unsuccessfully to secure a personal judgment against appellee Ronnie J. Earnest (hereafter "Earnest") on an account owed to ACCO by the prior owner of a business purchased by Earnest. We affirm.

In 1976, Earnest sold his livestock feed and supply store to his nephew, Joe Trollinger, for $16,000.00. Trollinger borrowed the purchase money from a bank and Earnest co-signed the note. In September, 1978, Earnest reacquired the assets of the business, including its stock in trade, from Trollinger. Earnest did not pay any money to Trollinger for the reacquisition but, as co-signer, was liable for the balance of approximately $14,000.00 on the purchase money note. When Earnest resumed ownership of the business in 1978, Trollinger owed ACCO $8,645.62 for merchandise pur-

chased for resale in the store. None of the merchandise purchased from ACCO remained in the store when Earnest reacquired it.

Earnest did not comply with the provisions of the Uniform Commercial Code—Bulk Transfers Act when he reacquired the store from Trollinger. ACCO learned of the change in ownership in October of 1978 when one of its representatives visited the store. In March 1979, ACCO filed this suit against Earnest. In its pleadings, ACCO alleged the account incurred and unpaid by Trollinger and Earnest's failure to comply with the Act. ACCO then alleged that Earnest was liable for the debt incurred by Trollinger and, in its prayer, requested judgment against Earnest for the amount of the debt, plus interest and costs.

After a nonjury trial, a take-nothing judgment was rendered and the trial court filed findings of fact and conclusions of law. In this court ACCO attacks the judgment by six points of error. In points one and two ACCO states there is no, or insufficient, evidence to support the following fact finding of the trial court: "At the time that Ronnie J. Earnest assumed the operation of Earnest Feed on September 29, 1978, there were numerous unpaid creditors that had not been paid by Joe Trollinger for products on hand as of September 20, 1978." Under points three and four ACCO attacks the conclusion of law of the trial court denying its claim "at the expense of other creditors" on the grounds that there is no or insufficient evidence of other creditors. Points five and six assert error in the trial court's conclusions of law that ACCO's damage evidence had no probative value and that ACCO failed to establish its damages. We will consider the points collectively.

■ Before specifically discussing the points it is necessary to review the purpose and nature of the Act that is the basis of the litigation before us. The debt in question was not contracted by Earnest and is not his direct personal obligation. Thus, if he has any liability, it is of a derivative

1. All references to sections 6.101, et seq. or to "the Act" refer to the Uniform Commercial Code—Bulk Transfers Act, Tex.Bus. & Com. Code Ann. §§ 6.101, et seq. (Vernon 1968).

nature. The Bulk Transfers Act and related predecessors were enacted for the protection of creditors who sell goods and merchandise to others on credit for inventory and resale. *See Southwestern Drug Corp. v. McKesson and Robbins*, 141 Tex. 284, 287–88, 172 S.W.2d 485, 486–87 (1943);[2] 26 Baylor L.Rev. 694 (1974). When a bulk sale of, or by, the debtor entity, of the kind described in section 6.102 of the Act, and not subject to the exceptions specified in section 6.103, occurs, the remaining provisions of the Act are applicable. The subsequent provisions establish, among other things, procedures for assembling a property schedule and a list of creditors and notifying the creditors of the proposed bulk transfer. Sections 6.104–.110, *supra*.

The Act does not, however, spell out the remedies available to a creditor if the notice provisions are not followed. It simply states that the bulk transfer is "ineffective against any creditor of the transferor" unless the requirements of the Act are followed. Sections 6.104–.105, *supra*. *See* 10 W. Dorsaneo, R. Anderson & P. Winship, Commercial Litigation § 241.110[1][b] (Texas Litigation Guide 1980). Apparently the creditor is relegated to whatever remedial relief is afforded by state law outside the code. *Southwestern Drug Corp. v. McKesson and Robbins*, 172 S.W.2d at 487; 3A R. Duesenberg & L. King, Sales and Bulk Transfers under U.C.C. § 15.08 (Bender 1980); 10 W. Dorsaneo, *supra*. Thus, if the creditor already has a judgment against the transferor and the bulk sale of the assets is ineffective as to the creditor, the creditor would have the same right to levy execution on the assets as would have existed prior to the bulk sale. *See* section 6.111, Official Comment 2, *supra*. If the creditor does not have a judgment against the transferor, an alternate remedy would be to seek one and also seek to have the bulk sale set aside, further transfers enjoined, and a receiver or trustee appointed or designated to gather the assets and preserve them for distribution pro rata among the creditors. *Southwestern Drug Corp. v. McKesson and*

*Robbins*, 172 S.W.2d 485; 10 W. Dorsaneo, *supra* at § 241.110[1][a].

 Regardless of the remedy pursued by the creditor, it is apparent that relief is obtained primarily from and against the assets transferred in bulk in disregard of the provisions of the Act. As stated in *Southwestern Drug*, 172 S.W.2d at 487:

Failure of the purchaser to comply with the Bulk Sales Law fixes his liability as that of a receiver, and he becomes bound to see that the property, or its value, is applied to the satisfaction of claims of the creditors of the seller. In other words, he becomes a trustee, charged with the duties and liabilities of a trustee. Under the law he is charged with liability only to the extent of the value of the property received by him and his liability is to all of the creditors pro rata.

 The purchaser becomes personally liable to the creditors only under the narrow circumstances described as follows in *Southwestern Drug*, 172 S.W.2d at 487:

However, if a purchaser or receiver disposes of or converts to his own use property acquired in violation of the Bulk Sales Law, placing it beyond the reach of creditors, he will be held personally liable for the value thereof.

*See also B & H Auto Supply, Inc. v. Andrews*, 417 S.W.2d 341, 346 (Tex.Civ.App.— Dallas 1967, no writ). Thus, personal liability of the purchaser is established upon proof of disposition or conversion that places the property beyond the reach of creditors and then only to the extent of the value of the property made inaccessible to the creditors.

 When the foregoing principles are applied to this case, it is apparent that the judgment must be affirmed for two reasons. First, ACCO brought this proceeding seeking a personal judgment against Earnest. There is no evidence in the record, however, that would support a personal

---

**2.** The *Southwestern Drug* case was decided before the present Act was enacted. We believe, however, that the discussion and principles of the case are still viable.

judgment against him. At the trial, Earnest testified that he had sold some of the property and still had some of it. There is no evidence of the value of the property sold, no evidence of the value of the property still on hand at the time of trial and no evidence that the property sold has been disposed of or converted in such a manner as to place it beyond the reach of creditors. *See* section 6.110.

Even if we were to construe ACCO's pleadings as seeking to enforce its claim only against the assets transferred to Earnest in violation of the Act, the proof is still deficient. There is an unchallenged finding of fact, binding on this court, *Adams v. American Quarter Horse Ass'n.*, 583 S.W.2d 828, 833 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.), that the assets transferred did not have a value in excess of debts owed to creditors. ACCO established a transfer in violation of the Act and established the amount of its debt. It did not present any evidence, however, of the assets on hand and available for satisfaction of the debt. As noted above, Earnest had sold part of the assets and still had some, but we have no evidence of the nature or value of either. Since the assets at the time of transfer did not exceed the debts owed to creditors, and since there was an unknown but apparently lesser quantity of assets on hand at the time of trial, it would have been impossible for the trial court to make an award to ACCO, had it been desirous of doing so. It simply could not determine, from the evidence, what to award ACCO.

The foregoing effectively disposes of ACCO's points of error. Points one through four, wherein ACCO says there is no or insufficient evidence of other creditors does not demonstrate reversible error, even if correct. Since ACCO did not establish the right to the relief it was seeking under its pleadings, the question of other creditors is immaterial to this appeal. Points five and six, attacking the conclusions of law that ACCO's evidence of damages had no probative value and that ACCO did not establish its damages by a preponderance of the evidence, likewise do not present reversible error. The deficiencies in the damage evidence are discussed above. We also observe that the only evidence presented on the value of the assets pertained to their value at the time of transfer. That evidence consisted of Earnest's opinion of the value of some of the assets, speculation on the value of other assets and estimates of the purchase price, several years prior to trial, of still other assets. For all of the reasons discussed above, the trial court's conclusions were proper.

Points of error one through six are overruled. The judgment of the trial court is affirmed.